LYNCH and BOWMAN <i>v.</i> WELSH.

Plaintiff in replevin, in proving property, may use an execution in which he is defendant and under which the property was delivered to him on a forthcoming bond, without producing the judgment.

If the general charge of the judge contain substantial answers to the law propounded in the points submitted, it is not erroneous to omit specific answers to each point in detail.

Earnings of property, received in fraud of creditors, may be by them followed into a chattel purchased therewith, in the ownership of the party to the fraud.

ERROR from the Common Pleas of Dauphin county.

*June* 25. Replevin for a wagon, harness, horses, &c. The pleas were *non cepit,* and property in Lynch. The direction of the

court, that the evidence of a want of transfer of possession was conclusive of fraud, the defendants claiming under process and sale thereon, and disposed of the whole case, excepting as to the wagon. A brief statement will sufficiently explain the questions of law raised on this voluminous record.

The plaintiff, in the course of his evidence of title, under exception by defendant, called a constable, who produced an execution against the plaintiff, and proved a levy, and a forthcoming bond by him. The objection to this evidence was, that no judgment had been showed. The seizure and bond was proved, and that there had been no re-delivery of this wagon.

It appeared that Welsh had purchased a wagon from Bowman, and left it with him as teamster. There was very strong evidence to show that the design of this transfer was simply to cover the property from the creditors of Bowman.

The wagon was used for hauling ore for the Mount Vernon furnace, the team being furnished by the owners of that establishment; and at the time of the sale, the account which had been formerly kept with Bowman for this wagon, &c., was transferred, with his consent, to Welsh, and continued to be kept in his name.

Subsequently, Welsh procured the wagon now in question to be built; and it was paid for by orders on the furnace, which were debited in his account.

His honour, ELDRED, President J., having instructed the jury, as before stated, that the contract relating to the old wagon was fraudulent in point of law, directed them, that if the new one was purchased with the earnings of the old one, it was subject to the same rule.

The first and second points of the defendant were, that under the pleas, the identity of the property, and its legal and *bonâ fide* ownership must be proved by the plaintiff. These points, it will be seen, were answered; as there was no evidence of ownership of the new wagon in Bowman, unless it was paid for by the earnings of the old one, in point of law his property as to his creditors.

The fourth point was a request to charge the jury, that a transfer of title, under the following circumstances, was void. A constable having levied on certain effects of Bowman, Welsh inquired, whether, if other property was produced, he would release that seized. The constable assented, and the debt was paid by the sale under the new levy. The court thought these facts alone, without any thing else, would not render a transfer by Bowman fraudulent.

Seven other points were submitted, of considerable length, with

a request to reduce the answers to writing, and file the same. The court below, and here, considered they were sufficiently answered in the general charge; and as the only fact under which the defendant could have recovered was negatived by the jury, and the charge was distinctly in the defendant's favour on all the other points; they are not repeated here.

The admission of the evidence, the denial of the fourth point, and the want of specific answers to the defendant's points, together with the charge as to the necessity of finding the payments to have been made with the proceeds of Bowman's wagon, were the errors assigned.

*Fisher*, for plaintiff in error, contended that an execution without the production of the judgment on which it issued, was not evidence. Buchannan *v.* Moore, 10 Serg. & Rawle, 279; Wilson *v.* McVaugh, 2 Yeates, 86; Day *v.* Wright, 1 Peters, 66, 67; Wegand *v.* Lipton, 5 Serg. & Rawle, 332; Hampton *v.* Specknagle, 9 Serg. & Rawle, 212—221; Gaskell *v.* Morris, 7 Watts & Serg. 32.

That the want of specific answers to points submitted was error. 2 Serg. & Rawle, 74; 6 Watts & Serg. 58, 62; 5 Watts, 483.

That the first and second points contained the true law. Co. Litt. 145; Buller's N. P. 53; 6 Watts, 503; Marsh *v.* Pier, 4 Rawle, 283; 5 Mass. 363.

On the fourth point, to show such a transfer fraudulent, *per se*, he cited 10 Serg. & Rawle, 419; 4 Serg. & Rawle, 483—487.

*McCormick*, contrà.—The plaintiff did not claim under the execution, but merely used it to show he then got possession from a constable levying as his property. As to the charge of the court, it was directly in favour of the defendant; the question of fact only was submitted to the jury on the evidence.

*June* 25. GIBSON, C. J.—Had the plaintiff below offered Brian's execution to make title under it, it might not have been admissible without the judgment. To an action by the defendant on an execution against the sheriff, or his vendee, to recover the value of the property sold, the writ, without the judgment, furnishes a full defence, because it contains in itself an authority for what would also have been a trespass. But in an action by a previous purchaser from him, it is necessary to show the plaintiff in the execution, to have been a judgment creditor by the judgment itself, as the first step to prove the sale by the original owner to have been fraudulent by the 13 Eliz. So is the law laid down in Martyn *v.* Prodger, 2 Burr. 2631; S. P.

Bull. N. P. 243. But so far was the plaintiff below from claiming under Brian's execution, that he offered it, as the defendant in it, to prove that the property had been seized as his, but restored to him on a forthcoming bond, and never redelivered. The execution, therefore, was indisputably evidence as part of the *res gesta*.

But the defendants prayed direction that the plaintiff could not recover on his possession without proof of property, general or special; and the want of a separate and specific direction to that effect, is assigned as error. It is true, that replevin is different, in that particular, from trespass, which is founded on possession, and in which the plaintiff's title is not controvertible by a third person, possession being itself a title against a wrongdoer. But it is equally true that possession is *primâ facie* evidence of title even in replevin; and that where the right of property is not contested in the pleadings, it is conceded. Here it was actually put in issue; and the judge put it before the jury, with proper explanation, as the pivot of the cause; and he consequently excluded the plaintiff's possession as any thing else than evidence of title. What matters it, then, that he made no special response to the prayer, since he answered it affirmatively by a general direction? It is a mistake to suppose that every prayer must have a separate answer. The judge's recognition of a parcel of disjointed propositions would give the jury little more instruction than the scattered leaves of the sibyl gave to those who consulted her; and it certainly is not error in him to extract the law contained in them, and apply it in a connected form to the evidence.

All the points, on which specific direction was prayed in relation to the wagon and team included in the bill of sale, were effectively ruled in the defendant's favour; not indeed severally, but collectively, in the general and positive charge that the sale to the plaintiff was fraudulent and void in contemplation of law; and the jury, it seems, have found this part of the case in conformity to it. Even had the judge not so ruled, the verdict would show that the defendants had not been injured by it, and preclude them from assigning the omission as error. Without further remark, therefore, I dismiss the subject of those prayers for specific direction, adapted to detached fragments of the case, which, as they lead to no view of the whole ground, serve but to complicate it and entrap the judge in a labyrinth. They are therefore not to be favoured.

The controversy about the ownership of the new wagon, which is the matter in contest here, was put on its true ground. The wagon was ordered by the plaintiff; and, if paid for with his money, was his property. It was alleged, on strong evidence, however, that it

was paid for with the earnings of the old wagon and team; and as the fact was contested, it was properly left to the jury. Now these earnings, if the wagon were paid for with them, could be followed into it only by showing that the plaintiff had *mala fide* received and applied them; and that brought the inquiry back to the validity of the bill of sale. But the judge went the whole length of charging, that it was fraudulent in point of law; and that the fraud would taint the contract for the new wagon if it were paid for with the gains from the use of the team, and the old one. What more would the defendants have? The law of the case was ruled in their favour; and if they received injustice, it was at the hands of the jury.

Judgment affirmed.