## Karstorp's Estate.   Karstorp's Appeal.

*Husband and wife—Purchase money and profits—Creditors.*

Where real estate is bought by a wife, but paid for in part by the wife and in part by money loaned by the husband, when the husband is insolvent, and business is carried on therein under the wife's name for some months, the creditors of the husband are entitled, out of the proceeds of a subsequent sale of the property, only to the amount of the purchase money contributed by the husband, with interest thereon, and not to any portion of the profits realized by the wife's venture.

Argued Oct. 3, 1893.   Appeal, No. 30, Oct. T., 1893, by Della Karstorp, administratrix, from decree of O. C. Jefferson Co., Sept. T., 1890, No. 10, dismissing exceptions to auditor's report on exceptions to administratrix's account in estate of H. L. Karstorp, deceased.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Adjudication of administratrix's account.

The auditor, J. A. Scott, Esq., found the facts as follows:

" From the testimony it appears that on October 6th, 1880, H. L. Karstorp purchased a lot of ground on Hill street, in the borough of Reynoldsville, for the sum of $50. A dwelling house was erected and some other improvements made upon said lot. The lumber for the building of house, fencing of lot and other improvements was furnished by Mr. Peter Emerick, the father of Mrs. Della Karstorp, and was a gift to her. On the 26th of August, 1886, Mr. Karstorp sold said property to Joseph Morrison for the sum of $800. He divided the money received from said sale, saying it was her share of the lumber her father had furnished for the improvements above mentioned. This money was placed in Seeley & Alexander's bank to the credit of Della Karstorp, who subsequently allowed her husband to draw it out and use it, with the understanding that he was to replace it and pay for the use of it. The bank books show that he did draw out money from her account, and also deposited various sums to her credit from time to time.

" On the 27th of December, 1888, an hotel property was purchased by article of agreement between Mrs. Amelia A. Reynolds and Della Karstorp, for the consideration of $3,750, as follows: $1,000 on the execution of the agreement; $500 December 27, 1889; $500 December 27, 1890; $500 December 27, 1891; $500 December 27, 1892, and $750 December 27, 1893. The $1,000 hand money was paid by check of Della Karstorp. Shortly afterward Mr. and Mrs. Karstorp moved into said property and began keeping hotel, and made some improvements on the premises. The second payment and its interest was paid out of the proceeds of the business of said hotel.

" H. L. Karstorp died July 8, 1889, and letters of administration on his estate were granted to his widow, Della Karstorp, September 2, 1889. Personal property to the amount of $300 was duly appraised and set apart to and accepted by her.

" The retail liquor license of H. L. Karstorp was, at the September Sessions of court, transferred to said Della Karstorp, and she continued to run said hotel until the 8th day of January, 1890, when she sold said hotel, the furniture and fixtures, liquors and stock therein (including the articles appraised and set aside to her as widow of decedent), and the business of said

hotel, to C. G. Matson, by article of agreement, for the consid-
eration of $6,500, as follows: $2,700 in hand, $1,500 in one
year from that date, and the balance, $2,250 to be paid to Mrs.
Amelia A. Reynolds, being the balance due her from Della
Karstorp on the contract between them.    The hand money,
$2,750, and $500 of the payment due January 8, 1891, has been
paid to Mrs. Karstorp leaving $1,000 due from C. G. Matson
on said contract.

" Considerable testimony was taken to prove that the lumber
furnished by Mr. Emerick to his daughter for the improvement
of the Hill street property was not worth $600.   The auditor
is of the opinion that it is not necessary to consider this evidence
as the debts due the exceptants were not contracted until after
the sale to Morrison, and under these circumstances Mr. Kars-
torp would have a right to make such division of the money
between himself and his wife as he chose, or to give it all to
her for that matter.   However, if we were to consider this evi-
dence a comparison of the amounts that each put into this
property would show that the wife did not receive an undue
proportion of the proceeds of such sale.

" But it is not possible, in any view of the evidence or the
law, as the auditor believes, to find that all the balance of the
$1,000 paid to Mrs. Reynolds at the date of the purchase from
her, was the money of Della Karstorp.   Doubtless the husband,
under the arrangement and bargain between them, would have
a right to pay his wife for the use of her money for the twenty-
eight months that he had it, but the amount claimed, $400, is
altogether too large.   The auditor does not believe the evidence
shows that the administratrix has been guilty of fraud, as she
seems to have acted in accordance with what she believed to
be her just and legal rights in the premises.   But he is of the
opinion that she should be surcharged with such portion of the
proceeds of the sale of said hotel property as would give the
creditors of H. L. Karstorp the benefit of whatever amount he
actually had in the same.   It is somewhat difficult to arrive at
this amount.   H. L. Karstorp seems to have made some repairs
to the premises, the value of which has not been proven.   The
sale to Matson embraced the real estate, the furniture and fix-
tures, liquors and stock in said hotel (including the widow's
$300 in furniture), and the business and good will of the same.

The hotel license had been transferred to her and she had run the hotel a considerable time prior to the sale to Matson.   Originally, then, Mrs. Karstorp's $600 went into the purchase of this hotel, together with twenty-eight months' interest on the same, or $84.   There should be added also $300, the appraised value of the property set aside to her as widow of the decedent. Besides these amounts are the liquors, stock, etc., sold to Matson, the value of which has not been shown.   H. L. Karstorp, then, had in the purchase $400, less $84, the interest above mentioned, or $316."

The auditor surcharged the accountant with $650.00 being one fifth of $3,250, which she had received from the sale of the property.

Exceptions to the auditor's report by the accountant were dismissed by the court.   The accountant thereupon appealed.

*Errors assigned* were dismissal of exceptions, quoting them.

*C. Mitchell*, for appellant, cited: Silvius's Ex'rs v. Porter, 74 Pa. 448; Seeds v. Kahler, 76 Pa. 262; Pusey v. Harper, 27 Pa. 469; Wood v. Wheelock, 93 Pa. 298; Lennig's Ap., 93 Pa. 301; Second Nat. Bank of Titusville's Ap., 85 Pa. 528; Stayton v. Riddle, 114 Pa. 464; Married Persons' Property Act of June 3, 1887, P. L. 332; Rush v. Vought, 55 Pa. 437; Brown v. Pendleton, 60 Pa. 419; Maloney's Est., 42 Leg. Int. 276.

*W. F. Stewart, John Conrad, Means & Clark, M. M. Davis* and *Winslow & Calderwood* with him, for appellee, cited: Coates v. Gerlach, 44 Pa. 43; Ammon's Ap., 63 Pa. 284; Buehler v. Gloninger, 2 Watts, 226; Stewart v. Kearney, 6 Watts, 453; Bouslough v. Bouslough, 68 Pa. 495.

OPINION BY MR. JUSTICE MITCHELL, Oct. 30, 1893:

When Karstorp sold his house in 1886 he gave his wife six hundred dollars, as her share from the lumber that her father had given her for the construction of the house, and the auditor finds that this was a fair proportion of the value, but even if not, it was a good gift, as Karstorp was not then indebted.

The purchase of the hotel property in December, 1888, was in appellant's name, and the auditor finds that it was made by

her.   This was the most important fact in the case,   The cred-
itors contended that the purchase was made by Karstorp and
that it was put in his wife's name by legal if not actual fraud.
But the auditor found otherwise, and the court, though appar-
ently entertaining some doubts, indicated by his expression
that "if there is any one to complain here, it should be the
creditors," nevertheless confirmed the finding, and we there-
fore accept it, in the absence of clear proof of error.

The first payment for the hotel was one thousand dollars, and
of this, the auditor finds that only six hundred, with interest,
was the money of the appellant.   It is a plain inference, though
not specifically found, that Karstorp at that time was indebted,
so that he could not as against his creditors pay his wife more
than legal interest.   Something over three hundred dollars of
Karstorp's money therefore went into this hotel purchase, and
could be followed by his creditors.   Upon this basis the audi-
tor surcharged the appellant with one fifth of the purchase
money subsequently received by her for the sale of the hotel.
This was an error.   On the facts as assumed by the findings,
when his wife purchased the hotel, Karstorp gave her the differ-
ence between what he owed her and the thousand dollars she
paid.   This was a valid gift between themselves, and against
all the world but the creditors, and the latter's right, in the ab-
sence of fraud on her part, was only to annul it, and treat it as
so much money of their debtor in her hands, not to follow it
into the profits of a separate investment by her.   What the ar-
rangement was between the husband and wife as to the business,
and what his interest in the hotel was, if he had any, was not
shown, and cannot be assumed in the absence of evidence.   On
the finding of the auditor it was her property, the husband lived
only six months after its purchase, she continued the business
after his death, made the subsequent payment on account of the
purchase, and finally the sale out of which the main profits of the
whole matter accrued.   To any share in those profits, the cred-
itors have shown no valid title.   All they can legally ask now
is the return of the money with interest which the husband
gave away ineffectually as against their rights.

The decree is reversed, and decree now that the account
stand as a final account on which the appellant is to be sur-
charged with $316.00, with interest from Dec. 29, 1888; and
the record is remitted for distribution accordingly.