**Ana H. PASOS, Plaintiff,**

v.

**Herman S. FERBER, Marion Juanita Ferber, Defendants,**

and

**Tri-F's Associates, Inc., Intervening Defendant.**

**Civ. No. 9022.**

United States District Court
M. D. Pennsylvania.

Jan. 25, 1967.

878

B. Todd Maguire, Wilkes-Barre, Pa., Leo McCormick, Kansas City, Mo., for plaintiff.

No appearance for defendants.

Albert H. Aston, Wilkes-Barre, Pa., for intervening defendant.

Allan M. Kluger, Wilkes-Barre, Pa., for garnishee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND OPINION

SHERIDAN, Chief Judge.

This matter comes before the court on the objections of Tri-F's Associates, Inc. (Tri-F's), intervening defendant, to the attachment of funds in the hands of Craft Associates, Inc. (Craft), garnishee.

On October 7, 1964, a judgment of $20,955.60, together with interest, was entered in the United States District Court for the District of Kansas in favor of Ana H. Pasos, plaintiff, and against Herman S. Ferber and Marion Juanita Ferber, defendants. The judgment was based on findings that in 1959 and 1960 defendants wilfully and maliciously converted plaintiff's funds to their own use. On July 3, 1965, defendants' post trial motions were denied. On July 20, 1965, a certified copy of the judgment was registered in this district and an execution writ issued against defendants.[1] The writ directed the Marshal to attach the property of defendants in the possession of Craft. Craft, a designer and manufacturer of furniture, with its principal place of business in Wilkes-Barre, Pennsylvania, in this district, had engaged defendant, Herman S. Ferber, as its sale representative in a multi-state area in the midwest and allegedly owed him commissions. On August 2, 1965, Craft filed an affidavit that it did not employ defendants, had none of their property in its possession, and was not and would not become indebted to them.[2] On June 7, 1966, plaintiff amended her writ to add Tri-F's as a party. The amended writ alleged

that Tri-F's was a sham corporation, which defendant caused to be incorporated and that he had transferred the Craft franchise and certain assets to it to defraud plaintiff, that Tri-F's was the alter ego of defendant and that any monies due it from Craft were in reality due defendant.

Both plaintiff and Tri-F's agree that the primary issue is whether Tri-F's is the alter ego of defendant. Plaintiff asserts that another issue is whether defendant fraudulently transferred the franchise and certain assets to Tri-F's. Tri-F's contends that this issue is relevant only insofar as it bears on whether Tri-F's is the alter ego of defendant. A hearing was held and evidence received on both issues.

In 1954, defendant started to represent Craft in the sale of furniture in an area which included all or parts of the States of Kansas, Iowa, Nebraska and Missouri. To cover this territory it was necessary to drive about 35,000 miles per year. There was no written contract of employment but merely an oral arrangement under which defendant received an eight percent commission on sales. The commission was payable on all Craft sales in the territory, although defendant was free to make boundary and commission adjustments with Craft representatives in adjoining territories. Sales were made in the name of Craft only, and Craft was apprised of all customers to whom sales were made. This arrangement was similar to that with other Craft representatives, all of whom were on commission. So far as Craft is concerned the arrangement was terminable at will and without notice. As a matter of practice, Craft gives thirty days' notice of intention to terminate. Termination pay is neither contemplated nor given.

During the time defendant represented Craft, he also represented six or seven

---

1. 28 U.S.C.A. § 1963.

2. While the writ was directed against property of both defendants, insofar as the record in this proceeding is concerned, only Herman S. Ferber is involved. Hereinafter, defendant will refer to Herman S. Ferber only. Further reference will not be made to Marion Juanita Ferber unless specifically indicated.

other manufacturers and had a combined total of 125 customers. Craft considered him to be a good salesman.

As a part of his duties with Craft, defendant was required to attend annual or semi-annual regional furniture shows in Dallas, Kansas City, New York City, Los Angeles, San Francisco and Chicago, the principal show. When attending the shows, defendant worked at the Craft display stand and occasionally made sales. The primary purpose of the shows was promotional rather than sales. Prior to 1962, defendant was married to defendant, Marion Juanita Ferber, who travelled with him to the various shows and while she helped to a limited extent at the stands, she did not take an active part in the business. Two children were born of this marriage which ended in divorce in 1961.

In February 1962, defendant married Talitha Ferber. Prior to her marriage, Mrs. Ferber had been engaged in business and management pursuits and for a long time had been self-supporting. Beginning in 1942, she served three and one-half years as a WAC commercial transportation officer. She managed a large beauty salon and served as a district sales manager for a hair dye concern. She owned and managed three beauty salons in connection with which she also had a cosmetic franchise. She held various offices in state and civic groups. Between 1961 and 1964, she had an income of $16,000 to $20,000 a year from her individual businesses.

After her marriage to defendant Mrs. Ferber interested herself in his business. She organized an office which was maintained at their residence. Prior to this defendant had no formal records or systematized office procedure. She attended furniture shows with him to learn the business and to help to the extent that she could. Later she travelled with him while he sold and serviced accounts. In June 1962, she became a representative of San Hygene Manufacturing Corporation, a company never before represented by defendant, and also took over complete representation of one of his companies, Plasto Manufacturing Company. During this time her own business declined.

In January 1964, defendant was stricken with pneumonia. In February 1964, while he was recuperating, Mrs. Ferber became actively engaged in his business. In July 1964, defendant was found to have high blood pressure and several hospitalizations resulted. His doctors advised a decrease in business activity and more rest. About this time, Mrs. Ferber and defendant first discussed the possibility of a corporation. Because of defendant's health it was apparent that either Mrs. Ferber would have to conduct the business or the franchises would have to be surrendered. Also at this time, preliminary contacts were made with Craft and the other manufacturers in an effort to keep the franchises.

In the fall of 1964, Mrs. Ferber went alone on the road to sell and service accounts. She was able to engage in her own business only on weekends. During this time she consulted with defendant whose health continued to be bad. Defendant's gross commissions from Craft and from all sources during the period 1962 through 1964 were:

|      | Craft       | All Sources |
|------|-------------|-------------|
| 1962 | $20,367.30  | $39,343.43  |
| 1963 | 27,954.62   | 48,135.62   |
| 1964 | 34,954.33   | 45,524.29   |

For her assistance, Mrs. Ferber received $8,343.70 in 1963 and $6,427.47 in 1964.

In December 1964, Tri-F's was organized under the laws of the State of Nebraska. The articles of incorporation provided that Tri-F's was to commence business on January 1, 1965, for the purpose of carrying on a general sales enterprise. The corporation had no formal offices. Its registered office was the office of the attorney who handled the incorporation. The operating records were kept in the residence of defendant and Mrs. Ferber. The physical assets of Tri-F's consisted of a desk, typewriter and filing cabinet, all con-

tributed by Mrs. Ferber, who was issued 98 percent of the capital stock. The other two percent was issued to the attorney. Mrs. Ferber was elected president and treasurer and the attorney vice-president and secretary. Mrs. Ferber, the attorney and another were elected to the board of directors. Defendant was retained as a consultant. He held no other position with Tri-F's.

Since Craft's arrangement with defendant was terminable at will, it was not assignable or transferable. All of defendant's accounts were transferred to the corporation which also assumed all of his bills. Defendant received no other consideration. At about this time, defendant notified Craft that he desired to have Tri-F's represent Craft. Craft agreed since it was satisfied defendant would be associated with Tri-F's. The arrangement was identical to that with defendant—informal, oral and terminable at will—except that in the early part of 1965 Mrs. Ferber negotiated a change under which Craft agreed to pay a nine percent commission on certain accounts after a certain volume was reached. The January 1965 payment represented $2,842 for sales made in December 1964. These sales were mail orders directly from the customer to Craft. This payment was used to reduce the obligations assumed by Tri-F's. .

In January 1965, defendant's financial condition was poor. He sold his home and he and Mrs. Ferber moved into an apartment. The amount realized was not sufficient to pay his debts. He relies almost entirely on Mrs. Ferber for his support. At this time, Mrs. Ferber assumed complete control of the business, selling, keeping books and writing orders. She is the only steady employee of Tri-F's. Defendant only occasionally accompanied her on the road. Mrs. Ferber decreased the number of representations to three—Craft, Plasto Manufacturing Company and San Hygene Manufacturing Corporation—but increased the accounts to 175 and increased the volume on existing accounts. She discontinued as too costly a display at the Kansas City furniture show. She attended the other furniture shows at which she engaged in sales and promotional work Defendant, who usually accompanied her, occasionally assisted. In the 1966–67 K. C. Home Furnishings Association guide and reference book for retail furniture dealers, Talitha Ferber only is listed in the index as representing Craft, San Hygene Manufacturing Corporation and Plasto Manufacturing Company. In another section of this guide, the pictures of both defendant and Mrs. Ferber appear. Defendant is identified as a sales consultant for Tri-F's. Craft has been well satisfied with Tri-F's because since January 1965, the sales in its territory have been the highest ever.

Defendant receives no salary as a consultant. In 1965, Tri-F's paid him about $5,000, an amount determined sufficient to cover his children's expenses and to afford him maximum Social Security coverage. He receives a bonus if Tri-F's makes a profit. He did not receive a bonus during 1965. In March 1966, he was paid $6,600 for services rendered in 1965.

In June 1966, pursuant to the amended writ of execution, Craft ceased to forward commissions to Tri-F's. The commissions withheld were for sales after April 1966, and at the time of the hearing totalled $13,312.71. Mrs. Ferber has continued to operate the business on borrowed money.

Neither Tri-F's nor plaintiff has urged the application of law other than that of Pennsylvania, and plaintiff has cited Pennsylvania law in support of her argument. Pennsylvania law, therefore, will be applied. Cf. Richmond Lace Works, Inc. v. Epstein, S.D.N.Y.1962, 31 F.R.D. 150, 152.

A corporation is an entity separate and distinct from its shareholders. Erie Drug Co. Case, 1964, 416 Pa. 41, 43, 204 A.2d 256. The fiction of a corporation as an entity distinct from the individuals comprising it will be disregarded and the individuals and corporation considered identical whenever jus-

tice and public policy demand and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless. Gagnon v. Speback, 1957, 389 Pa. 17, 131 A.2d 619. Where a corporation has been formed by the relatives of a defendant for the sole purpose of allowing him to continue in business without responsibility to his creditors, the corporate veil will be disregarded. Satler v. Rice, 1957, 184 Pa.Super. 550, 135 A.2d 775.

█ It is uncontradicted that defendant's health seriously declined in the months immediately preceding and following incorporation. He was hospitalized from October 27, 1964, until November 13, 1964, due to high blood pressure, myocardial weakness and nervous complications. In September 1965, he underwent surgery and was in the hospital three to four weeks. In between he required medical and hospital attention for nasal hemorrhages which had occurred for the first time in July of 1964. It is apparent that defendant's health prevented him from continuing as a sales representative for Craft.

The assumption of the franchise by Tri-F's was not an attempt by defendant to hide behind the corporate veil while operating the business himself. Mrs. Ferber had substantial business experience before meeting defendant. Prior to assuming control of Tri-F's, she had learned all phases of the furniture business. When the time came to run the business she was well qualified. The advice of defendant, who had long experience in the sales field and with the Craft franchise, was valuable. This does not minimize her prime contribution to the business. She dropped lines, canvassed the territory, increased the number and volume of accounts, increased sales and worked at the furniture shows. That defendant advised and helped to some extent in these endeavors does not establish that he was the prime or even a substantial moving force behind Tri-F's.

Plaintiff argues that the incorporation within three months of the judgment is proof it was to avoid the judgment. This argument is not convincing in view of other facts, particularly the ill health of defendant. Defendant was not able to continue and if Mrs. Ferber had not stepped in, the business would have gone to someone else. That she chose to incorporate on the advice of counsel is understandable. Limitation of liability and the usual reasons were present. It is doubtful if anything of value was transferred. Any attempt to transfer the franchise would have been ineffective without the consent of Craft, since it could terminate and engage a successor without defendant's consent. The customers list was known to Craft. Presumably, upon termination, it would have been turned over to defendant's successor. More importantly, neither the franchise nor the customers list had value to defendant at the time of incorporation.

Thus far, the evidence of the transfer of property has been viewed from the standpoint of the alter ego issue. Plaintiff asserts that the fraudulent transfer of assets is, of itself, an issue[3] but does not disclose the manner in which the issue is pertinent to the relief she seeks. Plaintiff does not seek a retransfer or sale of or title to any assets; the only relief sought is the award of the commissions in the hands of Craft. Tri-F's objects and argues that this issue should be tried in and under the law of Nebraska. It has cited no authorities.

3. It is questionable whether this issue was properly and timely raised. By the amended writ, plaintiff sought only to attach Tri-F's commissions; there was no prayer for an order to turn over the asset which produced the commissions. The "Suggestions" attached to and made a part of the amended writ alleges a fraudulent assignment but only as evidence that Tri-F's was the alter ego of defendant. Thus, the issue, as such, was not raised in the pleadings. When Tri-F's filed its petition to intervene, which for present purposes may be considered as an answer, it addressed itself only to alter ego.

Plaintiff cites Golder v. Bogash, 1937, 325 Pa. 449, 188 A. 837,[4] for the proposition that it is proper to raise the issue of fraudulent conveyance in garnishment proceedings. That case dealt with the issue of fraudulent conveyance of the very item attempted to be attached, and not with the question of the right to attach income derived from a fraudulent conveyance of an intangible.

█ Even if the fraudulent conveyance issue is considered separately, plaintiff has not established her right to relief. Plaintiff relies on the Pennsylvania Uniform Fraudulent Conveyance Act, 39 P.S. §§ 351–363, which provides several situations under which a conveyance can be treated as fraudulent, but she has not specified the precise situation on which she relies. In her brief, plaintiff contends that the transferee was in reality Mrs. Ferber, not Tri-F's, and argues that under the Act, particularly § 354, where a husband is in debt to his wife at the time of transfer, fraud as to creditors is presumed and the burden is upon the wife to show by clear and satisfactory evidence that at the time of the transfer her husband was solvent or that she paid a fair consideration. Winter v. Welker, E.D.Pa. 1959, 174 F.Supp. 836. The simple answer is that Mrs. Ferber was not the transferee. The evidence will not sustain such a finding. At the time of the transfer, defendant not only had no physical assets in the business, but had substantial liabilities which were assumed by Tri-F's. These were almost all paid at the time the writ issued. In view of the informal and indefinite basis on which defendant represented Craft, it cannot be said that any transfer was not for a fair consideration. See 37 C.J.S. Fraudulent Conveyances § 176.

█ Even if it is assumed that defendant transferred his customers list and franchise to Mrs. Ferber and to defraud creditors, plaintiff would not be entitled to the profits realized from the use of these assets. In the absence of evidence that Mrs. Ferber participated in the fraud, plaintiff cannot follow the property transferred into the profits realized therefrom. In re Karstorp's Estate, 1893, 158 Pa. 30, 27 A. 739. In that case, Karstorp, who was indebted so that as against creditors he could not transfer property to his wife, gave her about $400 toward a down payment of $1,000 on a hotel, title to which was taken in her name. The hotel was operated by her, and was subsequently sold at a profit. The court said:

"* * * when his wife purchased the hotel, Karstorp gave her the difference between what he owed her and the thousand dollars she paid. This was a valid gift between themselves, and against all the world but the creditors, and the latter's right, in the absence of fraud on her part, was only to annul it, and treat it as so much money of their debtor in her hands, not to follow it into the profits of a separate investment by her. What the arrangement was between the husband and wife as to the business, and what his interest in the hotel was, if he had any, was not shown, and cannot be assumed in the absence of evidence. On the finding of the auditor it was her property, the husband lived only six months after its purchase, she continued the business after his death, made the subsequent payment on account of the purchase, and finally the sale out of which the main profits of the whole matter accrued. To any share in those profits the creditors have shown no valid title. * * *"

Accord, Lynch v. Welsh, 1846, 3 Pa. 294. It is not alleged in the amended writ that Mrs. Ferber participated in the fraud. In her proposed findings of fact and conclusions of law, plaintiff has not requested a finding that Mrs. Ferber participated in the fraud. The presumption of a fraud in husband and wife

4. Rule 69 of the Federal Rules of Civil Procedure provides that the procedure in proceedings supplementary to and in aid of execution shall be in accordance with State practice.

transactions, which shifts to the wife the burden of going forward with the evidence, does not, without more, establish intentional participation on the part of the wife-transferee in the fraud. Cf. Amadon v. Amadon, 1948, 359 Pa. 434, 59 A.2d 135. There is no evidence that Mrs. Ferber participated in any fraud.

Tri-F's has set up exemption from attachment as an alternate defense. In view of the above findings and conclusions it is not necessary to discuss this defense, but it should be pointed out that wages and salaries are exempt from execution in Pennsylvania. Act of 1845, April 15, P.L. 459, § 5, 42 P.S. § 886, and that Pennsylvania appellate cases emphasize that funds payable for personal services are within the protection of the statute and are exempt. Whether the compensation is labelled wages or commissions is not controlling. McCloskey v. Northdale Woolen Mills, 1929, 296 Pa. 265, 145 A. 846; Bell v. Roberts, 1942, 150 Pa.Super. 469, 28 A.2d 715. Compensation for personal services paid to the defendant or to Mrs. Ferber could not be attached. See Dunn v. Printing Corp. of America, E.D.Pa.1965, 245 F. Supp. 875.

An appropriate order will issue.