J-S86013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.W. HALL, INC., A CORPORATION | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL W. NALLI, ESQUIRE AND | : | No. 771 WDA 2016 |
| MICHAEL W. NALLI, P.C. | : | |

Appeal from the Judgment Entered April 25, 2016
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 11132-2013

BEFORE: GANTMAN, P.J., MOULTON, J., STEVENS[*], P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:   **FILED FEBRUARY 15, 2017**

J.W. Hall, Inc. appeals from the order entered by the Court of Common Pleas of Beaver County granting summary judgment in favor of Michael W. Nalli, Esq. and Michael W. Nalli, P.C., Defendants/Appellees in a legal malpractice action brought by Appellant. We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history as follows:

> The [present] action arises as the result of a sale of a restaurant and liquor license for an establishment located in Hopewell Township, Beaver County, Pennsylvania, in 2011. Defendant Michael W. Nalli drafted the purchase agreement, and the claims arise from that transaction. Plaintiff [J.W. Hall, Inc.,] asserts that it was represented by Nalli in that transaction and, further, that as a result of that representation, negligence occurred that caused plaintiff [J.W. Hall, Inc.,] to incur losses after the purchasing entity, J.B. Culinary Enterprises, Inc., defaulted on its obligations under the purchase agreement and went into bankruptcy.

*Former Justice specially assigned to the Superior Court.

\*\*\*\*

The pleadings and discovery . . . give rise to the facts that are discussed herein. Commencing in the spring of 2011, an individual by the name of Jeffrey Belsky (hereinafter "Belsky") entered into negotiations with Joseph Hall (hereinafter "Hall"), president of plaintiff, J.W. Hall, Inc.,[] in an attempt to purchase J.W. Hall's Steak and Seafood Inn located in Hopewell Township, Beaver County, Pennsylvania. The parties initially haggled over the price and ultimately agreed on $800,000 as the purchase price.

Belsky thereafter contacted attorney Michael Nalli, whose office was, and is, located in Center Township, Beaver County, for the purpose of incorporating J.B. Culinary Enterprises, Inc. (hereinafter "J.B. Culinary") to operate the restaurant after sale and to draft the purchase agreement. Attorney Nalli provided Belsky with an engagement letter, which Belsky signed.

Shortly thereafter, Belsky and Hall met at Attorney Nalli's office to discuss a draft of the purchase agreement on June 23, 2011. At that meeting, Attorney Nalli asked Hall if he had an attorney, to which Hall responded "No, Mike, I don't. You can take care of this, can't you?" There is a reference in the record that Nalli responded "Sure, Joe, no problem." It should also be noted that there are several references in the record to confirm that Hall and Belsky shared the expense of Attorney Nalli's legal fees for preparing the documents.

Following this meeting, Attorney Nalli made revisions to the purchase agreement, and sent an email to Belsky regarding what would happen in the event of a default on the agreement. The email stated that the purchase agreement would include a provision for an unsecured note so that [J.W. Hall, Inc.] could not simply take back the collateral in the event of a default.

Hall contacted his son, a tenured professor at Harvard Business School, regarding the proposed agreement. His son reviewed the agreement and raised questions regarding re-purchasing the property in the event of default and potential tax implications. In July of 2011, Belsky and Hall finalized the agreement on behalf of their respective companies for the purchase price of $800,000. The sum of $225,000 was to be paid up-front and the remaining $575,000 was to be paid in monthly increments of

$5,761.05. After execution of the agreement, the liquor license was transferred and J.B. Culinary began to operate the establishment.

After J.B. Culinary assumed operation of the restaurant, it made some improvements. J.B. Culinary operated the restaurant and made approximately 14 monthly installment payments, but the payments stopped in December of 2012. J.B. Culinary sought to renegotiate the monthly payments, but Hall declined that offer. Both parties to this action agree that Hall contacted defendant Nalli about the situation, and Nalli stated he could not do anything for Hall because he was representing Belsky.

J.B. Culinary filed for bankruptcy, and Hall created a new entity, JoeWillRoger, LLC, which purchased the restaurant [out of bankruptcy] for $178,000. Hall also claims to have spent $75,000 in legal fees for counsel to represent him in the re-purchase, but only $56,394.24 in fees can actually be documented and accounted for, all of which were paid by personal checks of Hall and his wife or by the account of JoeWillRoger, LLC. Hall also, either personally or through the new entity, JoeWillRoger, LLC, expended approximately $50,000 to $60,000 for renovations to the restaurant in connection with reopening it [].

Trial Court Opinion, 4/25/16, at 1-4.

On September 30, 2013, J.W. Hall, Inc., commenced a legal malpractice and breach of fiduciary duty action against Attorney Nalli and his professional corporation. Among the averments in the complaint were that Defendants/Appellees knew J.W. Hall, Inc., relied solely on them to facilitate the closing with J.B. Culinary, failed to discuss or include in the purchase agreement the personal guaranty of Belsky as guarantor for the loan in the event of default, and failed to prepare and file a UCC-1 financing statement in order to perfect J.W. Hall, Inc.'s, security interest in the restaurant/business as collateral. With respect to the last averment, J.W.

Hall, Inc., computed its losses with reference to what its financial position would have been had such a security clause existed.

On February 4, 2016, after discovery was complete, Defendants/Appellees filed a motion for summary judgment asserting J.W. Hall, Inc., failed to present sufficient evidence to establish a question of material as to whether: (1) an attorney-client relationship between the parties existed; (2) J.B. Culinary would have agreed to a security clause in the purchase agreement; and (3) J.W. Hall, Inc., incurred actual damages. Viewing the record in a light most favorable to non-movant J.W. Hall, Inc., the court perceived a dispute of material fact in each of Defendants/Appellees' first two issues and, thus, declined to grant summary judgment thereon.

With respect to the final issue, however, the trial court first determined that J.W. Hall, Inc., failed to establish a dispute of material fact over whether it incurred actual losses. Undisputed evidence shows J.W. Hall, Inc., has both its restaurant and an amount of funds—from receipt of J.B. Culinary's down-payment and subsequent installment payments—greater than or at least equal to those funds it expended to reacquire the restaurant from bankruptcy. The court concluded, therefore, that J.W. Hall, Inc., cannot show it suffered actual losses when it was essentially in the same position in which it would have been had it never entered into the agreement drafted by Attorney Nalli. Accordingly, in its Order of April 25,

2016, the court granted Defendants/Appellees' motion for summary judgment and entered judgment in their favor. This timely appeal followed.

Appellant J.W. Hall, Inc., presents the following questions for our review:

    **I.**    **DID THE TRIAL COURT ERR IN FAILING TO FIND THAT THE PLAINTIFF SUFFERED PECUNIARY HARM BY THE DEFENDANTS' ESTABLISHED FAILURE TO INCLUDE A SECURITY AGREEMENT IN THE SALES AGREEMENT?**

    **II.**    **DID THE TRIAL COURT ERR IN REFUSING TO TREAT AS IDENTICAL THE CORPORATION AND THE INDIVIDUALS OWNING ALL ITS STOCK AND ASSETS AND THAT THE COSTS WERE PAID BY A 'MULTITUDE OF SOURCES' OTHER THAN PLAINTIFF WHERE JUSTICE AND PUBLIC POLICY DEMANDED DOING SO AND WHEN THE RIGHTS OF INNOCENT PARTIES WERE NOT PREJUDICED THEREBY NOR THE THEORY OF CORPORATE ENTITY MADE USELESS?**

    **III.**    **DID THE TRIAL COURT ERR IN FINDING THAT PLAINTIFF WOULD RECEIVE A WINDFALL WHERE PLAINTIFF, VIS A VIS JOSEPH HALL, INCURRED OVER $313,000 IN DAMAGES?**

Appellant's brief at 4.

In reviewing a trial court's decision to grant summary judgment, our standard review is as follows:

> As has been oft declared by this Court, summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the

existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt.

On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Allen–Myland, Inc. v. Garmin Int'l, Inc.***, 140 A.3d 677, 682 (Pa.Super. 2016) (quoting ***Summers v. Certainteed Corp.***, 606 Pa. 294, 307, 997 A.2d 1152, 1159 (2010) (internal citations and quotation marks omitted)).

We have, recently, discussed the burden borne by a plaintiff in a legal malpractice action:

The Supreme Court of Pennsylvania has described the unique nature of a legal malpractice claim:

[A] legal malpractice action is distinctly different from any other type of lawsuit brought in the Commonwealth. A legal malpractice action is different because ... a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action. ... It is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent in the handling of the underlying action and that negligence was the proximate cause of the plaintiff's loss since it prevented the plaintiff from being properly compensated for his loss.

- 6 -

> *Kituskie v. Corbman*, 552 Pa. 275, 714 A.2d 1027, 1030 (1998) (footnote omitted). Therefore, an important question in a legal malpractice action is whether the plaintiff "had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')." *Poole v. W.C.A.B. (Warehouse Club, Inc.)*, 570 Pa. 495, 810 A.2d 1182, 1184 (2002).

*Heldring v. Lundy Beldecos & Milby, P.C.*, ___ A.3d ____, 2016 WL 6946583 (Pa.Super. Nov. 28, 2016).

The case *sub judice* involves not the would-be recovery of a judgment in an underlying litigation, but, instead, an analogous would-be recovery of collateral through the exercise of a security clause in a purchase/sale agreement. In both instances, the claim states that, but for the negligence of counsel in an underlying matter involving a third party, the legal malpractice plaintiff would have recovered its due from such third party. Accordingly, the trial court properly turned to *Kituskie* for guidance in the present matter.

To support its view, the court relied on the *Kituskie* rationale that the "collectibility of damages in the underlying action" is part of the analysis of actual loss compensable in a legal malpractice action. In this regard, *Kituskie* explained that "actual losses in a legal malpractice action are measured by the judgment the plaintiff lost in the underlying action and the attorney who negligently handled the underlying action is the party held responsible for the lost judgment." *Kituskie*, 552 Pa. at 282, 714 A.3d at 1030. A legal malpractice plaintiff should not obtain a judgment "against an

attorney which is greater than the judgment the plaintiff could have collected from the third party; the plaintiff would be receiving a windfall at the attorney's expense." *Id.* at 283, 714 A.3d at 1030.

As noted, *supra*, the trial court purported to apply these principles in finding that J.W. Hall, Inc., failed to demonstrate an issue of material fact as to actual losses where it ultimately experienced a "break-even" result. That is, because the discovery record established that J.W. Hall, Inc., owned essentially the same restaurant after default as it did before selling to J.B. Culinary, and the income it earned from the sale offset the expenses incurred from re-purchasing the restaurant from bankruptcy, it could not establish losses requisite to a legal malpractice claim.

We discern error with the court's assessment of losses, however, as it reflects a comparison of J.W. Hall, Inc.'s,[1] pre-transaction and post-transaction economic realities, when the proper computation of actual losses should instead reflect what, if any, rightful benefits eluded J.W. Hall, Inc., due to its attorney's alleged malpractice. Just as a judgment lost due to courtroom malpractice defines a litigant's actual loss, so, too, would collateral lost due to transactional malpractice define a contracting party's

---

[1] It is only for ease of discussion regarding the issue of actual losses that we identify J.W. Hall, Inc., as both the seller and re-purchaser of the restaurant in question. By doing so, we do not mean to suggest a disposition of the subsequent issue premised on the charge that a different entity bought the restaurant out of bankruptcy.

loss. While we do not dispute the trial court's observation that J.W. Hall, Inc., appeared no worse off after repurchasing the restaurant than it was before transacting with J.B. Culinary, the *Kituskie* inquiry concerns itself with a different assessment of damages flowing from alleged malpractice.

Here, J.W. Hall, Inc., framed the inquiry properly when it effectively claimed that its loss was the rightful benefit it was denied when Attorney Nalli negligently failed to incorporate in the purchase/sale agreement an industry-standard security clause authorizing J.W. Hall, Inc., to retake ownership of the collateralized restaurant in the event of buyer's default. This loss, moreover, was not speculative, incalculable, or illusory; it was the total of all requisite expenses made to buy the collateral out of bankruptcy, and J.W. Hall, Inc., identified them during discovery. We, therefore, reject the court's grant of summary judgment for want of evidence of actual losses.

The trial court's determination that J.W. Hall, Inc., failed to demonstrate actual losses had a second component, however, that proves more problematic to the Appellant company's cause. The record establishes that it was not actually J.W. Hall, Inc., that paid $178,000 to purchase the restaurant out of bankruptcy and $56,394.24 in legal fees to effectuate such purchase, but was, instead, the separate entities of JoeWillRoger, LLC, and Mr. and Mrs. J.W. Hall in their individual capacities. As such, the trial court entertained the question of whether damages claimed by Plaintiff/Appellant J.W. Hall, Inc., were, in fact, incurred by separate and distinct entities even

though it is undisputed that Mr. Hall and his wife are the sole owners of the two corporations in question.

In addressing this issue, the trial court turned to, *inter alia*, **Sams v. Redevelopment Authority of New Kensington**, 431 Pa. 240, 244 A.2d 779 (Pa. 1968).  The court aptly summarized **Sams** as follows:

> In **Sams**, the New Kensington Redevelopment Authority adopted a resolution condemning a plot of land owned individually by Mr. Sams and Mr. Mannarino.  That plot of land was used as a scrap yard for the receipt of shipping of scrap metal.
>
> At the time of the condemnation, Sams and Mannarino also owned, through a corporation, another plot of land located on the opposite side of the street, which was being operated as a foundry.
>
> When awarding damages, the Board of Viewers awarded damages to Sams and Mannarino individually, [and] as copartners, trading and doing business as the corporation.  The Redevelopment Authority appealed on the basis that evidence should not have been admitted regarding the corporate property in that it did not have the same owner and was not used for the same purpose.

Trial Court Opinion, at 11.

The Pennsylvania Supreme Court noted at the outset of its decision that, under the then-governing Eminent Domain Code, damages may be assessed as if two or more non-contiguous tracts of land were one parcel only upon a demonstration that the tracts are owned by one owner and are used together for a unified purpose.  The corporate shareholders, Messers Sams and Mannarino, argued that the Court should pierce the corporate veil of their corporation to find an identity of ownership between the two lots, as

- 10 -

the two men were the sole shareholders of the corporation and doing so would further the practical application of the intent of the law. *Id.* at 781. The Court refused to do so.

Precedent allowed courts to disregard the corporate entity or personality "only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime," the Court noted. Because the partnership in question was not formed for such purpose, the Court refused to disregard its corporate status and recognize an identity of ownership between the two lots. The Court reasoned:

> The cases on disregarding the corporate entity suggest that in order for the courts to justify piercing the corporate veil, it must be determined that the corporate fiction is being used by the corporation itself to defeat public convenience, justify wrong either to third parties dealing with the corporation, or internally between shareholders' (derivative suits), perpetrate fraud or other similar reprehensible conduct. **Since, in the instant case, the corporate fiction is not being employed as a means to shield itself from its ultimate responsibilities and liabilities, no sound reason exists for piercing the veil for the benefit of the individual shareholders, who created the veil in order to procure other business advantages. In our view, one cannot choose to accept the benefits incident to a corporate enterprise and at the same time brush aside the corporate form when it works to their (shareholders') detriment. The advantages and disadvantages of the corporate structure should be seriously considered and evaluated at the time such organization is contemplated and after incorporation has been selected, the shareholders cannot be heard to argue that the courts should not treat them as a corporation for some purposes and as a corporation for other purposes, which suits their present economic interest.**

*Id*. (emphasis added).

- 11 -

The trial court relied upon *Sams* to grant Defendants/Appellees' motion, and as J.W. Hall, Inc., fails to distinguish *Sams* on the facts,[2] we agree that the rationale expressed therein is directly on point and represents controlling precedent. To buy back their former restaurant, Mr. and Mrs. Hall formed a new corporate entity, JoeWillRoger, LLC, that was separate and distinct from both Appellant/Plaintiff J.W. Hall, Inc., and themselves in

_____

[2] Appellant contends our decision in *Kellytown Co. v. Williams*, 426 A.2d 663 (Pa.Super. 1981) supports piercing the corporate veil in the present case. We disagree, as *Kellytown* approves of treating a corporation and its owners as identical entities only within the framework announced in *Sams*. *Kellytown* provides:

> The established rule in Pennsylvania is that a court will not hesitate to treat as identical the corporation and the individual or individuals owning all its stock and assets whenever justice and public policy demand and when the rights of innocent parties are not prejudiced thereby **nor the theory of corporate entity made useless**. *Great Oak B & L, et al. v. Rosenheim*, *supra*, *Pasos v. Ferber*, 263 F.Supp. 877, 881-82 (1967); *Gagnon v. Speback*, 389 Pa. 17, 131 A.2d 619 (1957); *Wedner Unemployment Compensation Case*, 449 Pa. 460, 296 A.2d 792 (1972); *Tucker v. Bienstock*, 310 Pa. 254, 165 A. 247 (1933). In *Sams v. Redevelopment Authority*, 431 Pa. 240, 244 A.2d 779 (1968), the Supreme Court of Pennsylvania held that:

>> The corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime.

*Kellytown*, 426 A.2d at 668 (emphasis added). As explained, *infra*, Appellant fails to meet this standard for piercing the corporate veil.

their individual capacities. There is no reason to doubt that the Halls discerned some advantage to forming this new entity,[3] and **Sams** admonishes that the corporate status providing such advantage may not simply be "brushed aside" whenever consequential disadvantages do not suit shareholders' individual interests.

It was the Halls' election to re-purchase the restaurant with their own personal monies and the funds of a newly-incorporated JoeWillRoger LLC, exclusively. Restaurant seller, Appellant/Plaintiff J.W. Hall, Inc., a separate legal entity, expended no funds in the re-purchase effort, and so it may not now identify the re-purchase payment as an actual loss it sustained for purposes of satisfying a necessary element to its legal malpractice claim. Because the trial court's finding to this effect was dispositive of the action, it properly granted Defendants/Appellees' motion for summary judgment, and we affirm for this reason.

Order Affirmed.

_____

[3] Appellant's request to pierce the corporate veil to its benefit is not without a degree of convolution, as it is asking the courts to pierce both its corporate veil and that of "JoeWillRoger, LLC" so that the two distinct corporate entities may effectively be considered the same entity for this discrete purpose. This would allow the courts to consider the money expended by JoeWillRoger, LLC as money expended by J.W. Hall, Inc. Of course, this begs the question of why the Halls elected to form a different corporation to repurchase the restaurant in the first place, and how requiring it to accept not only the presumptive advantages of its election but also the disadvantages would work the kinds of injustice addressed in **Sams**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/15/2017</u>