426 A.2d 663

KELLYTOWN COMPANY c/o Mineral Management
Corporation,

v.

Robert A. WILLIAMS, Appellant.

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed Feb. 20, 1981.

614

Leonard Dubin, Clearfield, for appellant.

F. Cortez Bell, Jr., Clearfield, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

Appellee, Kellytown Company (Kellytown) and Mineral Management Corporation, filed a complaint in Equity (R 2a) on August 12, 1974 against Robert A. Williams (Williams) individually to pierce the corporate veils of Dean Coal Company (Dean) and Doral Coal Corporation (Doral) respectively, [the two companies involved in the underlying transaction] and hold Robert A. Williams personally liable for damages in an amount alleged to be in excess of $10,000.

An answer to the complaint was filed on October 21, 1974 (R 18a) denying all the material allegations of the complaint.

The basis for appellee's action is predicated on an agreement consisting of four letters, Exhibits 1, 2, 3, and 4, all prepared by appellee, and the testimony of George R. Shiarella (24a).

Appellee's Exhibit No. 1 is a letter written by Kellytown Company (Kellytown) to Doral dated September 17, 1971, reciting they are the owners of and have contracted for startup extractive operations on 1,736 acres of coal leases known as the Kellytown Project located in Clearfield County, Pennsylvania. Doral was engaged to operate "Kellytown's coal properties," as independent contractors. As compensation, Kellytown agreed to pay "Doral" 65% of the gross sales of all coal produced or $5.75 per ton produced. This letter was signed Kellytown Company by Mineral Management Corporation, G. R. Shiarella, President, and accepted by Doral Coal Corporation, Robert Williams, President, attested by Mark Williams, Secretary (corporate seal imprinted).

Appellee's Exhibit No. 2 is a letter from Doral Coal Corporation (Doral) dated September 17, 1971 to Kellytown (prepared and typed by Kellytown) Re: Turnkey Contract for Coal Project, located in Clearfield County, Pennsylvania. Doral agreed to the Turnkey price of $500,000 for all the work necessary to begin extractive coal mining operations to

develop and exploit the Clarion Coal Seam on the 1,736 acres of coal which consists of subsisting and existing leases. A royalty of $.10 per ton of all coal extracted for supplying tangible equipment necessary on the property. Payment of the Turnkey price for startup operations was to be made by cash or check in three installments totaling $300,000. Delivery of Kellytown's Promissory Note in the amount of $200,000. This letter was signed Doral Coal Corporation by Robert Williams, President (corporate seal imprinted), agreed to and accepted on the 21st day of September, 1971 by Kellytown Company by Mineral Management Corporation, G. R. Shiarella, President.

Appellee's Exhibit No. 3 is a typed letter from Kellytown Company c/o Mineral Management Corporation, 477 Madison Avenue, New York, New York, 10022, to Dean Coal Company, dated September 17, 1971, appointing it as exclusive sales agent for all coal produced from Kellytown's properties known as the Kellytown Project for a period ending March 1, 1974, and agreeing to pay "Dean" a sales commission equal to four percent of the gross sales price of all coal sold. This letter is signed Kellytown Company by Mineral Management Corporation, G. R. Shiarella, President, agreed to and accepted the 17th day of September, 1971, Dean Coal Company, Inc., by Robert Williams, President (corporate seal imprinted).

Appellant's Exhibit No. 4 is a letter (prepared by Kellytown) from Dean Coal Company, Inc., dated September 17, 1971, addressed "To whom it may concern" advising that all negotiations and understandings prior to September 17, 1971 and not set forth in the papers signed as of this date are specifically cancelled and null and void; and that no understandings or conditions not incorporated therein shall have any force or effect. In addition to the four exhibits, a letter dated September 21, 1971 from Mineral to Dean and Doral advising Dean to establish a segregated funds account, all withdrawals will require two signatures, amongst Messrs. William, Wiles and Mineral. Also, as soon as Doral is fully formed, it will be the replacement entity of Dean in all documents signed as of September 17, 1971.

All the leases were terminated by the lessors and not by Robert A. Williams, for the nonpayment of royalty (63a, 64a) all the leases were to Dean Coal Corporation (65a), none were to Robert A. Williams individually (65a). All the various agreements were prepared by New York lawyers for Mineral Management Corporation (68a).

The court concluded that defendant, Robert A. Williams, is the real party in interest and is liable to the plaintiff for its loss by reason of breach of contract through lapse or cancellation of leases, that equity had jurisdiction to render a decree for money damages.

Accordingly, the court entered a Decree Nisi on March 2, 1978 finding for appellee (plaintiff) and decreeing and ordering (defendant) appellant, Robert A. Williams, pay to plaintiff-appellee the sum of $333,915.37 with interest from date of suit, to wit: August 21, 1974. Appellant filed exceptions on March 10, 1978. June 6, 1978, the court made absolute the Decree Nisi. Appellant has taken an appeal from said final order.

The first "Statement of Questions Involved" submitted by appellant is as follows:

Was the evidence adduced at trial legally sufficient to permit the court below to pierce the Dean & Doral corporate veils and hold Williams personally liable for the funds Kellytown advanced to Dean and Doral?

Mr. Lloyd M. Wilds testified on behalf of plaintiff-appellee that he was a resident of Sands Point, New York; that on September 17, 1971, he was not a stockholder in either Dean or Doral. Appellee offered no evidence that Robert A. Williams transacted any business in his individual name (N.T. 55a, 56a).

On cross-examination of Mr. Shiarella, President of Kellytown, there was an admission that he did not have a single writing signed by Robert A. Williams individually (N.T. 30a). Appellant, Williams, testified that in all his dealings with Mr. Shiarella, he dealt in a corporate capacity, all letters to Kellytown were signed by Williams as President (N.T. 55a,

56a). Williams never gave Shiarella any reason to believe he was dealing with him as an individual (56a, 57a). Williams resigned as project manager (62a); Lloyd[1] Wiles was the "king" and made all the decisions, he did as he wanted, Williams had nothing to say as project manager (N.T. 62a). All the leases [except one which is in litigation (64a) were cancelled for the nonpayment of royalties by the lessors (65a)]. Appellees were represented by New York counsel who saw all the leases (64a, 65a). Neither Williams nor any member of his family picked up the leases subsequent to their termination (65a).

A brief recitation of the facts does not establish that Williams, Dean and Doral were one. The only other evidence is the following: "The allegation in paragraph 13 of appellant's complaint is an allegation that by letter dated September 17, 1971 from Dean Company, Inc. to Mr. Robert A. Williams and Gloyd M. Wiles advising them that they are each to receive in connection with the Kellytown Project 50% of the profits of the Dean Coal Co., Inc., therefrom or from any successor corporation succeeding to Dean's place in the Kellytown Project. The letter further advises that Robert A. Williams and Gloyd M. Wiles are appointed as co-managers for the duration of the extractions of coal under the Kellytown Project." This letter was signed Dean Coal Company, Inc. by Robert Williams, President, and attested by (name illegible), secretary. Although paragraph 13 was admitted in appellant's answer, Exhibit D was not offered in evidence by appellee.

Mr. Williams did not fully understand that letter as to the division of profits (66a, 67a, 68a). The various agreements were drawn by the New York lawyers for Mineral Management (68a), and we assume from the entire testimony Mr. Wiles was an employee of Mineral Management (68a). A letter dated September 21, 1971 from Mineral to Dean and Doral advising Dean to establish a segregated funds account and all withdrawals would require two signatures amongst Messrs. Williams, Wiles and Mineral. There is no evidence

1. Sometimes designated as Gloyd.

that payment of the Turnkey sums for startup operations were not used for the purposes for which they were given. There is no evidence that Williams personally received or used any money received by Doral or Dean.

The court below cannot disregard the corporate entity without any legal basis. That this cannot be done was clearly shown in *Tucker v. Bienstock*, 310 Pa. 254, 165 A. 247 (1933). The court said 310 Pa. at 264, 165 A. 247, ". . . we have held we cannot set aside the corporate entity merely to accomplish or set up what would simply be an individual transaction . . ."

There is not the slightest intimation of any fraudulent attempt or calculated intent by Williams to conceal himself behind the corporate veil to the detriment of Mineral. It is the agreement itself, admittedly valid and drawn by Mineral, and freely entered into by the appellees, that shields appellant from the liability sought to be imposed by appellees.

That leaves one more question to be discussed.

Did the letter dated September 17, 1971 from Dean Coal Company, Inc. to Robert A. Williams and Gloyd M. Wiles to the effect that they were each to receive 50% of the profits of the Kellytown Project make one of those persons, viz., Williams, personally liable to return the initial payments received from Kellytown. If Williams is personally responsible to return the funds, why isn't Gloyd M. Wiles and Mineral?

All withdrawals required two signatures amongst Williams and Wiles and Mineral. Appellee made no allegation nor offered any evidence that withdrawals were made personally by Williams or for his personal use and account. Mineral did receive $2,500 in the late spring or early summer (27a) and also $4,400 (28a). All monies received from the sale of coal produced were paid directly to Kellytown (28a) benefit of Mineral. Doral advised Mineral on May 16, 1972 that they paid [plaintiff's Exhibit 4 (49a)] from monies received for coal sales in the approximate amount of $13,000 for payroll in the approximate amount of $12,000, and

Williams arranged for a loan to pay for trucking in the amount of $5,000 so that the owner will not lose his trucks. Shiarella testified on cross-examination (31a) that Dean had no liability to Kellytown for return of their money.

■ In a memorandum (51a), the court entered an order dismissing the action nisi based on the theory that the individuals could not be held liable for the wrongdoing of the corporation. The lower court said (51a) "We recognize that individuals acting in a corporate capacity are not ordinarily to be held personally liable (*Bucks v. Buckwalter*, 419 Pa. 544, 215 A.2d 625)." "However," the court continued, "because there has been an allegation and no testimony in support of the claim that the corporate arrangement was not the true status—that the individuals were actually the actors and liable for any losses suffered." The lower court concluded, the action should not have been dismissed upon close of plaintiff's testimony, but that appellee should have an opportunity to submit additional testimony. See *Great Oak Building and Loan Association et al. v. Rosenheim*, 341 Pa. 132, 19 A.2d 95.

At the continued trial beginning on September 14, 1976, plaintiff-appellee called no witnesses. The "benefit of additional testimony" the court sought never developed. The status of the case remained as it was when the court entered its original Decree Nisi. The defendant-appellant, however, called two witnesses, Robert A. Williams (54a, etc.) and his son, Mark A. Williams (68a).

Mark A. Williams testified on cross-examination (71a) the documents were drawn by Mineral Management. Robert A. Williams testified on cross-examination (61a) that he wasn't sure he understood the agreements because of the way they were written. Williams (66a) disagreed with Mr. Bell (counsel for Mineral) as to the meaning of the letter of September 17, 1971 as to the division of the profits.

The plaintiff-appellee did not meet the burden that the lower court requested, viz, additional testimony that the individuals were acting alone rather than in a corporate capacity.

The case cited by the lower court was *Great Oak B & L, et al. v. Rosenheim*, 341 Pa. 132, 137, 19 A.2d 95, 97 (1941) as authority to pierce the corporate veil:

[Page 136] . . . In an appropriate case. . . this court will not hesitate to treat as identical the corporation and the individual or individuals owning all its stock and assets. . . With this principle in mind, the paper mask of the charter, because it is nothing more, will not be permitted to hide the features of the individual behind it. What have we? A paper charter for a corporation created by defendant; nothing paid into the treasury of the paper corporation in the way of capital; all the stock issued to the defendant, his wife and daughter, nothing paid by them for it; a conveyance made by defendant to the paper corporation of properties for the acknowledged purpose of escaping liability for taxes thereon by him individually, no consideration passing for the conveyance; all the rents from the properties collected by defendant and all the avails of the properties absorbed by him under the guise of management fees and commissions, which amount to a very substantial sum during the tax years in question.

As we view it, the proofs required as detailed in the *Oak* case, supra, were absent in the case at bar. Dean was organized and in existence since 1953. Mineral Management provided by their letter to Dean dated September 21, 1971 that the payments will be used to establish segregated funds at the local bank and two signatures required for withdrawals amongst Williams, Wiles and Mineral Management. There is no allegation in either pleadings or testimony that Williams personally withdrew funds. Appellee had only established that Dean and his family were stockholders of Dean and that profits of Dean would be equally divided, 50% to Williams and 50% to Wiles, an employee of Mineral. All the instruments were prepared by New York counsel for Mineral Management, the instrument requiring a signature of Dean Coal Company, Inc. were executed by Robert A. Williams, President, and attested to by Mark Williams, Secretary, and the corporate seal was imprinted. That the standards set by the Supreme Court in *Oak*, supra, to pierce

the corporate veil were not met. In the case of *Sheetz v. Spagnol*, 224 Pa.Super. 85, 302 A.2d 379, CERCONE, J. said 224 Pa.Super. at 89, 302 A.2d at 381: "To permit the corporate veil to be pierced under these circumstances would be not preventing an injustice but in fact creating an injustice by allowing plaintiffs to impose upon defendant a liability different than that they agreed to impose upon him."

The established rule in Pennsylvania is that a court will not hesitate to treat as identical the corporation and the individual or individuals owning all its stock and assets whenever justice and public policy demand and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless. *Great Oak B & L, et al. v. Rosenheim*, supra, *Pasos v. Ferber*, 263 F.Supp. 877, 881–82 (1967); *Gagnon v. Speback*, 389 Pa. 17, 131 A.2d 619 (1957); *Wedner Unemployment Compensation Case*, 449 Pa. 460, 296 A.2d 792 (1972); *Tucker v. Bienstock*, 310 Pa. 254, 165 A. 247 (1933). In *Sams v. Redevelopment Authority*, 431 Pa. 240, 244 A.2d 779 (1968), the Supreme Court of Pennsylvania held that:

> The corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime.

In *Wedner Unemployment Compensation Case*, supra, the Supreme Court also adopted the strong presumption against piercing the corporate veil recognized by the Third Circuit Court of Appeals in *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967), cert. denied 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968):

> In applying the test (for piercing the corporate veil), . . . any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. . . Care should be taken on all occasions to avoid making "the entire theory of the corporate entity . . . useless. . .

*Barium Steel Corp. v. Wiley*, 379 Pa. 38, 108 A.2d 336, the court said:

There appears to be no clear test or well settled rule either in Pennsylvania or in the country at large as to exactly when the corporate veil can be pierced and when it may not be pierced.

 Since the evidence adduced at trial was legally insufficient, the court below improperly pierced the Dean and Doral corporate veils and held Williams, appellant, personally liable on the contracts between Kellytown-Mineral and Dean or Doral. Williams in all his dealings with Kellytown-Mineral acted in his disclosed capacity as President of Dean or Doral and the contracts were expressly binding on Kellytown and the two corporations only. Even when a corporation is owned by one person or family, the corporate form shields the individual members of the corporation from personal liability and will be disregarded only when it is abused to permit perpetration of a fraud or other illegality. No such prerequisite was alleged or established in the instant case. The implication that Dean's assignment of 50% of the profits to Williams justified piercing the corporate veil is legally and factually unwarranted.

We reverse the Decree of June 5, 1978 ordering Robert A. Williams to pay to Kellytown Company c/o Mineral Management Corporation the sum of $333,915.37 with interest from August 21, 1974.