statement of resignation that has been accepted by this Court.

Former Chief Justice FLAHERTY did not participate in the consideration or decision of this case.

Mr. Justice NIGRO concurred in the result.

Ethan GOOD, Appellee

v.

Timothy A. HOLSTEIN and Donna L. Holstein, Appellants.

Superior Court of Pennsylvania.

Argued Oct. 3, 2001.

Filed Nov. 15, 2001.

Terry L. Parish, Reading, for appellants.

Peter N. Harrison, Doylestown, for appellee.

Before: McEWEN, President Judge Emeritus, JOYCE, and KELLY, JJ.

KELLY, J.

¶ 1 Appellants, Timothy and Donna Holstein, ask us to determine whether the trial court erred when it found them personally liable to Appellee, Ethan Good, in the amount of $315,841.18. We hold that the trial court improperly found Appellants personally liable and reverse the trial court's judgment.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On May 29, 1992, Appellants' corporation, Blue Mack, Inc., bought real estate at 401 West High Street in Pottstown, Pennsylvania, from Mrs. Smiths, Inc. (later "Eggo"). The parties executed a purchase money mortgage to finance the conveyance in the amount of $340,000.00. Appellants also executed a personal surety agreement with Mrs. Smith's for the full amount of the mortgage.

¶ 3 In 1993, Blue Mack purchased the assets of Appellee's corporation, Good Transport Ltd. In the transaction, Good Transport acquired a second mortgage from Blue Mack on the 401 West High Street property. There was no personal surety agreement between the parties concerning the second mortgage. In May, 1995, Blue Mack defaulted on both mortgages. Mrs. Smith's, now doing business as Eggo, did not sue on the default of the first mortgage, but Good Transport did sue on the second mortgage and obtained a writ of execution for the 401 West High Street property on June 4, 1998. Appellee, Ethan Good, then purchased the first mortgage and note on the property from Eggo on August 28, 1998 for $70,000.00. No mention was made of the surety agreement during this transaction.

¶ 4 On September 29, 1998, Appellee filed a confession of judgment against Appellants on the surety agreement. On November 18, 1998, Appellee filed an action in assumpsit against Appellants seeking payment on the surety agreement.

¶ 5 On January 20, 1999, pursuant to the writ of execution on the second mortgage, the property was sold to Good Transport's attorney at a sheriff's sale for $1,959.24. The attorney later assigned the bid to Appellee and his wife. In accordance with the Deficiency Judgment Act, Appellee petitioned the court to determine the fair market value of the property. The court set the fair market value at $400,000.00. In its April 14, 1999 order, the trial court applied the value of the property to the debt and costs attributable to the first mortgage, which Appellee had purchased from Eggo. The court then applied the remaining balance of the fair market value ($59,120.70) to the second mortgage on the same property. This allocation left a deficiency of $325,021.18 on the second mortgage.

¶ 6 The confessed judgment and assumpsit action were consolidated and the case went to trial on September 6, 2000. The trial court determined that Appellants were personally liable to Appellee for $315,841.18. The court arrived at this amount by subtracting the deficiency amount ($325,021.18) from the fair market value of the property ($400,000.00). The court then took this number ($74,978.82) and subtracted it from the debt on the first mortgage including interest and costs($390,820.00). Based on the personal surety agreement created to secure the first mortgage, the trial court found Appellants personally liable to Appellee in the

amount of $315,841.18.[1]

¶ 7 Appellants filed post-trial motions, which the court denied by order dated December 4, 2000. Judgment was entered on December 29, 2000. Appellants filed this timely appeal on January 18, 2001.

¶ 8 Appellants present the following issues on appeal:

DID THE COURT ERR IN FAILING TO FIND THAT JUDGE ALBRIGHT'S ALLOCATION OF THE FAIR MARKET VALUE TO THE UNDISCHARGED FIRST MORTGAGE UNDER THE DEFICIENCY JUDGMENTS [SIC] ACT IN THE ACTION FILED TO NO. 95–21745 CONSTITUTED PAYMENT IN FULL OF THE FIRST MORTGAGE, UPON WHICH THESE JUDGMENTS REST?

DID THE COURT ERR IN ALLOWING [APPELLEE] TO PROCEED WITH THESE ACTIONS BASED UPON [APPELLANTS'] SURETY AGREEMENT WHEN THE [APPELLEE] MADE NO ALLEGATION IN THE PLEADINGS THAT THE SURETY AGREEMENT HAD BEEN ASSIGNED TO HIM, AND [APPELLEE] OFFERED NO DOCUMENTARY EVIDENCE OR TESTIMONY AT TRIAL TO PROVE THAT THE SURETY AGREEMENT HAD BEEN ASSIGNED TO HIM, OR THAT THERE WAS ANY CONSIDERATION FOR AN ASSIGNMENT OF THE SURETY AGREEMENT?

DID THE COURT ERR IN REFUSING TO ADMIT INTO EVIDENCE EXHIBITS RELATIVE TO THE INTENTION OF THE EGGO COMPANY NOT TO ASSIGN THE SURETY AGREEMENT?

DID THE COURT ERR IN FAILING TO FIND THAT THE FIRST MORTGAGE WAS MERGED INTO THE FEE WHEN THE PREMISES WERE ACQUIRED BY THE [APPELLEE] AND THAT THEREFORE THE FIRST MORTGAGE WAS DISCHARGED?

(Appellants' Brief at 4) (emphasis in original).

¶ 9 Our standard of review of the trial court's denial of a motion for a new trial is deferential and limited to a determination of whether the trial court abused its discretion or committed an error of law. *Collins v. Cooper*, 746 A.2d 615 (Pa.Super.2000). Furthermore, "[o]ur standard of review in a non-jury trial is clear. We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion." *Stonehedge Square Ltd. v. Movie Merchants, Inc.*, 454 Pa.Super. 468, 685 A.2d 1019, 1022 (1996), *appeal allowed in part*, 548 Pa. 228, 696 A.2d 805 (1997), *affirmed*, 552 Pa. 412, 715 A.2d 1082 (1998).

¶ 10 For ease of disposition we combine Appellants' issues one and four, as our treatment of these arguments together controls the outcome of the instant appeal. In these issues, Appellants argue that Good Transport, Inc. is the alter ego of Appellee, Ethan Good. Appellants contend that after Good Transport purchased

---

1. We note that neither party alleges that a surety agreement was given on the second mortgage, or that the surety on the first mortgage somehow applies to the second mortgage specifically.

the subject property at a sheriff's sale and Ethan Good purchased the first mortgage from Eggo, one entity held both mortgages as well as the mortgaged property. Appellants further maintain that by allowing Appellee to proceed against the junior mortgage first, leaving the senior mortgage unsatisfied, the trial court permitted Appellee to manipulate the mortgage priority rules. Appellants, as sureties of the first mortgage, aver that Appellee had a duty to discharge the liens on the subject property in order of their seniority. Appellants allege that failure to recognize such a duty would expose sureties to greater liability than could be anticipated by, in effect, applying a surety on a senior mortgage to all junior mortgages held by a single entity. Appellants conclude that the judgment of the trial court should be reversed. We agree.

■ ¶ 11 "[T]here is a strong presumption in Pennsylvania against piercing the corporate veil.... Also, the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person." *Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 41–42, 669 A.2d 893, 895 (1995). Nevertheless, "a court will not hesitate to treat as identical the corporation and the individuals owning all its stock and assets whenever justice and public policy demand and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless." *Kellytown Co. v. Williams*, 284 Pa.Super. 613, 426 A.2d 663, 668 (1981). "[T]he corporate form will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." *First Realvest, Inc. v. Avery Builders, Inc.*, 410 Pa.Super. 572, 600 A.2d 601, 604 (1991) (quoting *Kellytown, supra*, at 668). However, "there appears to be no clear test or well settled rule in Pennsylvania ... as to exactly when the corporate veil can be pierced and when it may not be pierced." *Kellytown, supra* at 668 (quoting *Barium Steel Corp. v. Wiley*, 379 Pa. 38, 47, 108 A.2d 336, 341 (1954)). "The alter ego theory is applicable where the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." *Miners, Inc. v. Alpine Equipment Corp.*, 722 A.2d 691, 695 (Pa.Super.1998) (emphasis omitted). This rule, however, does not limit application of the alter ego theory to cases in which a party seeks to hold the corporation owner liable for personal injuries. *See generally id.* Rather, the alter ego theory is available whenever one party seeks to hold the corporation owner liable for any claim or debt. *Id.*

■ ¶ 12 Additionally, "[t]he law has recognized a special relationship between the principal debtor and his surety based upon reciprocal duties and mutual confidence. The core of this special relationship is the surety's obligation to repay the debt of the principal debtor if the latter defaults due to inability to repay the creditor." *Etter v. Industrial Valley Bank and Trust Co.*, 356 Pa.Super. 502, 515 A.2d 6, 8 (1986), *appeal denied*, 514 Pa. 647, 524 A.2d 494 (1987) (internal citations omitted). Attendant to this special relationship are duties of the creditor to the surety. *First Federal Savings & Loan v. Reggie*, 376 Pa.Super. 346, 546 A.2d 62 (1988). A creditor has a duty to a surety to discharge liens on the mortgaged property in order of seniority. *Id.* In *First Federal Savings & Loan*, a case similar to the instant matter, the Reggies signed as sureties on a mortgage taken by their son and daughter-in-law to allow the couple to purchase a home on Spring Street, in Luzerne County. This mortgage constituted the first lien on the Spring Street property. One year later, the Reggies' son and daughter-

in-law purchased a home on Luzerne Avenue. The Reggies also signed as sureties on the Luzerne Avenue mortgage. This mortgage was the first lien on the Luzerne Avenue property. One year later, in 1975, the son and daughter-in-law refinanced the Luzerne Avenue mortgage. In so doing, the first mortgage on that property was marked satisfied, and the refinanced mortgage ("1975 mortgage") became the first lien on the Luzerne Avenue property and a second lien on the Spring Street property.

¶ 13 In 1978, the bank foreclosed on the 1975 mortgage. The total indebtedness of that mortgage was $58,377.00. At a subsequent sheriff's sale, the bank bought the Spring Street and Luzerne Avenue properties. The bank then sold the Spring Street property for $29,900.00 and the Luzerne Avenue property for $18,000.00.

¶ 14 Instead of applying the proceeds of the Spring Street property to discharge the first lien on that property (on which the Reggies were sureties), the bank deducted the proceeds from the combined indebtedness of the 1975 mortgage, leaving a deficiency of $12,682.86. Thus, the 1975 mortgage on the Luzerne Avenue debt was satisfied first from the sale of the Spring Street property. This included the satisfaction of the second lien on the Spring Street property (created when the son and daughter-in-law refinanced in 1975), **before** the first lien on that property (on which the Reggies were sureties).

¶ 15 This Court decided that,

Since the Reggies were sureties with the bank's knowledge, certain duties were imposed upon the bank with respect to the Reggies. *[First Nat. Bank & Trust Co. of Ford City v. ]Stolar*, 130 Pa.Super. [480 ]at 485, 197 A. [499 ]at 501[ (1938)]. The well-settled rule is that, if a creditor surrenders or impairs collateral which serves as security for the principal's debt, the surety is discharged from his obligation to the extent that the collateral would have produced sufficient funds to pay the debt in whole or in part. *Keystone Bank v. Flooring Specialists, Inc.*, 513 Pa. 103, 114, 518 A.2d 1179, 1185 (1986). By applying the proceeds of the sale of the Spring Street property to another unrelated loan in which the Reggies had no part, the bank improperly subordinated the senior lien (which was concomitant to the lien on the Reggies home) to the junior one. The collateral was impaired in the sense that the risk which the Reggies agreed to assume when they became sureties was substantially increased by the bank's actions. The Reggies rightfully expected that the mortgage instrument which they signed as sureties constituted a senior mortgage on the Spring Street property and that the senior lien would be satisfied before foreclosure could begin on their home. *Stolar*, 130 Pa.Super. 480, 197 A. 499 (action of bank in subordinating prior lien without consent of surety released and discharged surety).

In addition, by paying off the junior lien, which related to a transaction to which the Reggies were not a party, the bank extended the Reggies' liability to an unrelated loan. To sanction the actions of the bank in this case would be to extend the liability of the surety in one transaction to any number of subsequent transactions. The principal borrower would need only to pledge as collateral in subsequent obligations the property subject to a mortgage to which a surety is a party.

*Id.* at 65–66.

¶ 16 In the instant case, Appellee's corporation, Good Transport, Ltd., was a trucking company until 1993 when it sold its rigs and trucking equipment to Blue Mack. (N.T. 9/6/00, at 28). Presently,

Good Transport's only asset is the mortgage it took from Blue Mack. (*Id.* at 35, 41–42). It is unclear from the record what business, if any, Appellee's corporation has conducted since 1993. Appellee has been the only officer and president of his corporation since its inception. (*Id.* at 32). While Appellee testified that his corporation files a tax return each year, the corporation has not had any money in its bank account since 1993. (*Id.* at 35–36). Thus, for purposes of this appeal, we consider Appellee and his corporation to be one and the same entity. *See Kellytown, supra.* In support of this conclusion, we note that when Good Transport's attorney purchased the property at the sheriff's sale, he assigned the bid to Appellee and his wife personally. To recognize the corporate formality in this case would promote injustice, as Appellee would be permitted to collect the property through the junior mortgage and maintain a claim against the surety on the senior mortgage. *See id.; First Realvest, supra.*

■ ¶ 17 Once Appellee purchased the property at the sheriff's sale, he had a duty to Appellants, as sureties on the senior lien, to satisfy the senior mortgage first. *See First Federal Savings & Loan supra.* However, by suing on the junior lien first, Appellee impaired the sureties collateral, exposing them to greater liability than they could have reasonably anticipated. *See id.* Appellee cannot subordinate the senior lien by virtue of his possession of both liens. *Id.* Thus, the surety on the first mortgage was satisfied when the property was attributed a fair market value sufficient to cover the entire amount of the surety agreement. *Id.* The fact that Appellee proceeded against the junior lien before he obtained the senior lien does not absolve his duty to the surety of the senior lien to discharge the liens in order of their priority. *Id.*

¶ 18 Appellee should not be permitted to manipulate the mortgage priority rules to extend a surety agreement on a senior mortgage to an unrelated junior mortgage. *Id.* Moreover, Appellee may not purport to operate under a defunct corporation at the same time he maneuvers as a private speculator to avoid merging mortgages. *See generally Kellytown, supra; First Realvest, supra.* Appellee purchased the first mortgage from Eggo to protect his interest in the second mortgage, as the second mortgage was subordinate to the first. This goal was accomplished when Appellee purchased 401 West High Street without the need to satisfy the first mortgage in full. Additionally, Appellee still has a claim against Blue Mack for the deficiency remaining on the second mortgage. However, we will not permit Appellee to preserve a claim against Appellants personally based on the surety agreement where Appellee disregarded his duty to the sureties to discharge the senior lien in order of priority. *See First Federal Saving & Loan, supra.*

¶ 19 Based upon the foregoing, we hold that the trial court erred when it found Appellants personally liable to Appellee for the deficiency remaining on the second mortgage. Accordingly, we reverse the judgment of the trial court.

¶ 20 Judgment reversed.