J-A10033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DEBORAH HADDAD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE ZAWILLA AND BONNIE ZAWILLA, HIS WIFE, D/B/A GORILLA GENERAL CONTRACTOR AND GORILLA CONTRACTING | |
| Appellants | No. 885 WDA 2015 |

Appeal from the Judgment Entered May 6, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 12-024665

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY GANTMAN, P.J.:             **FILED SEPTEMBER 14, 2016**

Appellants, George Zawilla and Bonnie Zawilla, his wife, d/b/a Gorilla General Contractor and Gorilla Contracting, appeal from the judgment entered in the Allegheny County Court of Common Pleas, in favor of Appellee, Deborah Haddad, in this breach of contract action. We affirm.

The relevant facts and procedural history of this case are as follows. On January 3, 2011, Appellee entered into a home improvement contract with Appellants for the construction of an addition at Appellee's home. The January 3, 2011 contract listed the price of the addition as $367,200.00. Despite the listed contract price, Appellee paid Appellants approximately $455,000.00 for Appellants' work on the project. In April 2012, a dispute

arose between the parties over money owed. As a result, both parties signed a letter dated May 7, 2012, which stated Appellee would pay Appellants an additional $40,000.00 if Appellants finished certain construction tasks. Per the letter, Appellee was to pay Appellants $20,000.00 up front and $20,000.00 upon completion of the tasks listed in the letter. Appellee paid the initial $20,000.00; however, Appellee refused to pay the additional $20,000.00, despite Appellants' claim that they had completed the tasks listed in the May 7, 2012 letter.

On December 31, 2012, Appellee filed a complaint against Appellant George Zawilla. The complaint alleged Appellant George Zawilla had breached the January 3, 2011 home improvement contract and violated the Unfair Trade Practices and Consumer Protection Law (UTPCPL). Appellant George Zawilla filed an answer, new matter and counterclaim against Appellee on February 23, 2013. The counterclaim alleged Appellee had violated the terms of the May 7, 2012 "substituted contract" when she refused to pay the additional $20,000.00. On March 17, 2014, with the court's permission, Appellee amended the complaint to add Appellant Bonnie Zawilla as a defendant. Appellants filed an answer, new matter and counterclaim on July 25, 2014. The counterclaim once again alleged that Appellee had violated the terms of the May 7, 2012 "substituted contract."

The parties proceeded to a bench trial, where the court heard testimony on November 25, 2014 and January 12, 2015. On February 4,

2015, the court ruled in favor of Appellee on both her breach of contract claim and Appellants' counterclaim; however, the court ruled in favor of Appellants on Appellee's UTPCPL claim. On February 13, 2015, Appellants filed a post-trial motion in which they asked the court to enter judgment notwithstanding the verdict or grant a new trial. After argument on April 28, 2015, the court denied Appellants' post-trial motion on April 29, 2015. On May 6, 2015, the court entered judgment on the verdict in favor of Appellee. Appellants timely filed a notice of appeal on June 5, 2015. On June 10, 2015, the court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellants timely complied on June 26, 2015.

Appellants raise the following issues for our review:

> WHETHER THE [TRIAL COURT] ERRED IN FAILING TO ENTER JUDGMENT NOTWITHSTANDING THE VERDICT OR ORDER A NEW TRIAL BECAUSE APPELLEE FAILED TO INTRODUCE ANY EVIDENCE OF A CONTRACT BETWEEN APPELLEE AND APPELLANT BONNIE ZAWILLA?
>
> WHETHER THE [TRIAL COURT] ERRED IN FAILING TO ENTER JUDGMENT NOTWITHSTANDING THE VERDICT OR ORDER A NEW TRIAL BECAUSE APPELLEE FAILED TO OFFER ANY EVIDENCE OF THE EXISTENCE OF A CONTRACT BETWEEN APPELLEE AND ANY PERSON OR ENTITY OTHER THAN GORILLA CONSTRUCTION, INC.?
>
> WHETHER THE [TRIAL COURT] ERRED IN FAILING TO ENTER JUDGMENT NOTWITHSTANDING THE VERDICT OR ORDER A NEW TRIAL BECAUSE THE MAY 2012 SUBSTITUTED CONTRACT EXTINGUISHED ALL CLAIMS EXISTING UNDER THE ORIGINAL CONTRACT?

(Appellants' Brief at 2).

Our standard of review for the denial of a motion for JNOV is:

> [Whether], when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Holt v. Navarro*, 932 A.2d 915, 919 (Pa.Super. 2007), *appeal denied*, 597 Pa. 717, 951 A.2d 1164 (2008). Further:

> There are two bases upon which a [JNOV] can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Id.* "When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict…. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact…. A JNOV should be entered only in a clear case." *Id.*

Section 517.7 of the Home Improvement Consumer Protection Act ("HICPA") provides in relevant part:

- 4 -

## § 517.7.  Home improvement contracts

**(a) Requirements.**—No home improvement contract shall be valid or enforceable against an owner unless it:

(1)  Is in writing and legible and contains the home improvement contractor registration number of the performing contractor.

(2)  Is signed by all of the following:

    (i) The owner, his agent or other contracted party.

    (ii) The contractor or a salesperson on behalf of a contractor.

(3) Contains the entire agreement between the owner and the contractor, including attached copies of all required notices.

(4)  Contains the date of the transaction.

(5) Contains the name, address and telephone number of the contractor.  For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(6) Contains the approximate starting date and completion date.

(7) Includes a description of the work to be performed, the materials to be used and a set of specifications that cannot be changed without a written change order signed by the owner and the contractor.

(8) Includes the total sales price due under the contract or includes a time and materials provision wherein the contractor and owner agree in writing to the performance of the home improvement by the contractor and payment for the home improvement by the owner, based on time and materials.

\* \* \*

(9) Includes the amount of any down payment plus any amount advanced for the purchase of special order materials. The amount of the down payment and the cost of the special order materials must be listed separately.

(10) Includes the names, addresses and telephone numbers of all subcontractors on the project known at the date of signing the contract. For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(11) Except as provided in section 12, agrees to maintain liability insurance covering personal injury in an amount not less than $50,000 and insurance covering property damage caused by the work of a home improvement contractor in an amount not less than $50,000 and identifies the current amount of insurance coverage maintained at the time of signing the contract.

(12) Includes the toll-free number under section 3(b).

(13) Includes a notice of right of rescission under subsection (b).

**(b) Right of rescission.**—An individual signing a home improvement contract…shall be permitted to rescind the contract without penalty regardless of where the contract was signed, within three business days of the date of signing.

\* \* \*

**(g) Contractor's recovery right.**—Nothing in this section shall preclude a contractor who has complied with subsection (a) from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner if a court determines that it would be inequitable to deny such recovery.

73 P.S. §§ 517.7(a), (b), (g).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael A. Della Vecchia, we conclude Appellants' issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed July 22, 2015, at 4-9) (finding: **(issues 1-2)** evidence at trial demonstrated that Appellee paid approximately $455,000.00 to Appellant George Zawilla or one of his business entities during construction project on Appellee's home; each of these payments was deposited into personal Dollar Bank account in name of Appellant George Zawilla, Appellant Bonnie Zawilla, and Gorilla Built despite whether checks were made out to "Gorilla" or "Gorilla Construction"; evidence also showed that Appellant Bonnie Zawilla held herself out as sole proprietor and owner of company called Gorilla Contracting in connection with credit application with supplier Carter Lumber in 2011; during same time period and throughout construction at Appellee's home, Appellants represented themselves through trade or business as no less than seven separate business entities; when questioned about these distinct business entities at trial, Appellant George Zawilla admitted "they are all intermingled" and "it all comes down to my last name"; Appellant George Zawilla further admitted in deposition in another case that Appellant Bonnie Zawilla is also owner of these various entities; neither original contract nor

May 7, 2012 letter contain numerous terms required by HICPA for home improvement contracts; specifically, both original contract and May 7, 2012 letter fail to include home improvement contractor registration number for performing contractor, required notices, estimated start and completion dates, toll free number, and Notice of Right of Rescission; Appellants also failed to identify any subcontractors used on project; further, Appellants did not execute any signed change orders for additional moneys paid over contract price of $367,200.00; Appellants' actions justified piercing corporate veil under enterprise or "single entity" theory of liability; thus, court properly found Appellants personally liable; **(issue 3)** May 7, 2012 letter failed to include numerous required terms under HICPA; missing terms include performing contractor's home improvement contractor registration number, required notices, approximate start and completion dates for project, description of work to be performed, materials to be used, set of specifications which cannot be changed without written change order signed by homeowner and contractor, total sales price due under contract or time and materials provision, names and contact information for all subcontractors, toll free number, and Notice of Right of Rescission; because Appellants failed to follow requirements codified in HICPA, court properly refused to enforce May 7, 2012 letter against Appellee as substituted contract). Accordingly, we affirm on the basis of the trial court opinion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/14/2016

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

DEBORAH HADDAD,

                Plaintiff,

    vs.

GEORGE ZAWILLA and BONNIE
ZAWILLA, his wife, d/b/a GORILLA
GENERAL CONTRACTOR and
GORILLA CONTRACTING,

                Defendants.

No. GD 12-024665

885 WDA 2015

# OPINION

Honorable Michael A. Della Vecchia
710 City-County Building
414 Grant Street
Pittsburgh, PA   15219

FILED

15 JUL 22 PM 3: 43

DEPT. . . . . .ORDS
CIVIL . . . . ISION
ALLEGH . . . UNTY PA

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

DEBORAH HADDAD,

No. GD 12-024665

Plaintiff,

vs.

885 WDA 2015

GEORGE ZAWILLA and BONNIE
ZAWILLA, his wife, d/b/a GORILLA
GENERAL CONTRACTOR and
GORILLA CONTRACTING,

Defendants.

## OPINION

Michael A. Della Vecchia, Judge

This matter comes before the Superior Court on the appeal of George Zawilla and Bonnie Zawilla, husband and wife, d/b/a Gorilla General Contractor and Gorilla Contracting (hereinafter "Defendants"), from the judgment entered on the verdict in favor of Deborah Haddad (hereinafter "Plaintiff").

## I. BACKGROUND

This litigation arises from a construction project undertaken at the home of the Plaintiff, Deborah Haddad, in which she contracted with the Defendants, George and Bonnie Zawilla d/b/a Gorilla General Contractor. The project encompassed residential home improvements, specifically, a rear addition to the Plaintiff's property commonly

referred to as 93 Hoodridge Drive in the town of Mt. Lebanon, Allegheny County, Pennsylvania.

A contract for said addition and renovation was signed on or about January 3, 2011. The total contract price was $367,200.00. Despite said price, from January 3, 2011 to May 17, 2012, Plaintiff paid the Defendants $455,000.00. The Plaintiff alleges that the Defendants abandoned the job in early May of 2012 without completing work that had been previously paid for, thus breaching the contract of January 3, 2011.

Due to said breach, the Plaintiff was forced to engage the services of several other contractors to both assess the fitness of the project as completed, as well as the additional construction services necessary to complete the project.

## II. **PROCEDURAL HISTORY**

The Plaintiff filed a Complaint in Civil Action on December 31, 2012, docketed at the above-referenced general docket number. The Defendants filed an Answer, New Matter and Counterclaim on February 25, 2013. The matter was placed at issue on June 12, 2013, and proceeded to a non-jury trial, at which this writer presided, for two (2) days.[1]

At the conclusion of said trial, this writer entered a verdict in favor of the Plaintiff and against the Defendants in the amount of $158,850.00 as to the original claim filed by the Plaintiff. This writer additionally found for the original Plaintiff/Counter Defendant and against the original Defendants/Counter Plaintiffs as to their counter-claim against the original Plaintiff/Counter Defendant.

---

[1] This Court conducted a view of the property before testimony began.

The Defendants filed a Motion for Post Trial Relief on February 13, 2015. Following argument on the Defendants' request for trial relief, this writer denied said request by Order dated April 24, 2015. Judgment on the verdict was entered on May 6, 2015.

The Defendants filed a Notice of Appeal to the Superior Court of Pennsylvania on June 5, 2015. In response thereto, this writer directed the Defendants to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.C.P. 1925(b). Said statement was timely filed on June 26, 2015. This Court authors the following opinion in response thereto.

## III. ISSUES RAISED ON APPEAL

1. The Court erred in failing to enter judgment notwithstanding the verdict or order a new trial based upon Plaintiffs failure to prove a breach of contract against named individual defendants.

2. The Court erred in failing to enter judgment notwithstanding the verdict or order a new trial based upon Plaintiff's failure to provide any basis whatsoever for piercing the corporate veil of Gorilla Construction, Inc.

3. The Court erred in failing to enter judgment notwithstanding the verdict or order a new trial based upon Plaintiff's failure to prove a breach of contract against George Zawilla.

4. The Court erred in failing to enter judgment notwithstanding the verdict or order a new trial based upon Plaintiff's failure to prove a breach of contract against Bonnie Zawilla.

5. The Court erred in failing to enter judgment notwithstanding the verdict or order a new trial based upon the substituted contract of May, 2012, which extinguished any claim Plaintiff had against any Defendant for breach of the original agreement.

6. The Court erred in failing to enter judgment notwithstanding the verdict or order a new trial on the Defendants' counter-claim based upon the

3

undisputed testimony that the Plaintiff breached the substituted contract by her failure to pay an additional $20,000.00 as set forth in the May, 2012 agreement.

## IV. DISCUSSION

The Defendants' first two claims of error are with this Court's finding that the individual Defendants were liable for the loss suffered by the Plaintiff. The evidence proved that between January of 2011 and May of 2013, the Plaintiff paid to George Zawilla or one his business entities the sum of $455,000.00. The evidence further showed that each of these payments was deposited in the Defendants' personal Dollar Bank account, in the name of George G. Zawilla, Bonnie M. Zawilla and Gorilla Built despite whether the checks were made out to "Gorilla" or "Gorilla Construction."

Further, the Plaintiff provided evidence that Bonnie Zawilla held herself out to be a sole proprietor and owner of a company called Gorilla Contracting in connection with a credit application with supplier Carter Lumber in 2011. Evidence additionally proved that during this same period and throughout construction at the Haddad site, the Defendants represented themselves through trade or business as no less than seven (7) separate business entities. And most telling, George Zawilla admitted at trial when questioned as to all the distinct business entities, "you know, they are all intermingled." (See Tr. at 141).

Mr. Zawilla was questioned at length about the various business entities. When asked how he distinguished the entities, he testified:

BY MR. LINKOSKY:

"A. It all comes down to my last name.

Q. So it is all the same thing?

A. Yes.

4

THE COURT: Did you say it all comes down to your last name?

THE WITNESS: Yes.

THE COURT: So it is all you?

THE WITNESS: Yes." (See Tr. at 148)

Mr. Zawilla also admitted in the deposition in a previous case that his wife was also an owner of these various corporations. (See Tr. at 143)

Despite the strong presumption in Pennsylvania against piercing the corporate veil. (Wedner v. Unemployment Board, 296 A.2d 792, 794 (Pa. 1972), any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception....care should be taken on all occasions to avoid making the entire theory of corporate entity useless (Advanced Telephone Systems v. Com-Net Professional Mobile Radio, LLC, 846 A.2d. 1264-78 (Pa. Super. 2004) citing, Zubrik v Zubrik, 384 F.2d 267, 273 (3d. Cir. 1967)). "The corporate form will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." (Good v Holstein, 787 A.2d 426, 430 (Pa.Super. 2001)). (quoting Kellytown Co. Williams, 426 A.2d 663, 668 (Pa.Super. 1981)).

The Pennsylvania Commonwealth Court has set out the factors to be considered in disregarding the corporate form as follows: undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetuate a fraud (Department of Environmental Resources v. Peggs Run Coal Co., 423 A.2d 765 (Pa.Cmlth. 1980)).

At trial, evidence established none of the purported contracts contain a home improvement contractor registration number for the performing contractor; that the agreements are deficient in scope, in respect to notices, start and completion dates; there is the absence of the toll free number required under Pennsylvania's Home Improvement Consumer Protection Act (HICPA); and further deficient as to a Notice of the Right of Rescission as required by the Act. Additionally, the Defendants failed to identify any subcontractors used on the project or to execute a single Change Order, signed by both owner and contractor, for the additional moneys paid over and above the contract price.

This writer found the Defendants actions or inactions justified piercing the corporate veil under the enterprise, or single entity theory of liability, in which two or more corporations share common ownership and are, in reality, operating as a corporate combine (*See*, Miners Inc., v. Alpine Equipment, 722 A.2d 691, 694 (Pa.Super. 1998)).

Following the testimony and evidence produced at trial, it was apparent to this writer that the Defendants be held personally liable. "Where a corporation operates as a mere façade for the operations of a dominant shareholder, the dominating shareholder may be held liable for the corporation's inequitable conduct perpetrated through the use of the corporate form's protections" (Newcrete Products v. City of Wilkes-Barre, 37 A.3d. 7, 12 (Pa.Cmwlth. 2012). See also Bennett vs. A. T. Masterpiece, 40 A.3d 145 (2012).

The Defendants next raise in their third and fourth claims of error exception to this writer's finding that the contract was indeed breached by the Defendants. This Court was presented with two (2) days of credible evidence that more than convinced this writer that the contract was breached by the Defendants.

6

Initially, the fact that the Plaintiff paid $455,000.00 for a job which she contracted to pay $367,200.00 (absent any signed Change Order by the Plaintiff) signaled to this writer that there may be a breach. When you combine that fact with the Plaintiff's incurred additional and remedial costs of $24,310.00 to reinstall the HVAC system; that the Plaintiff had paid $11,550.00 for contractors to buy, install and seal new tile flooring; additional and remedial electrical work totaling $8,000.00; additional and remedial plumbing work in the sum of $16,800.00; $3,231.00 in cleaning costs; additional and remedial painting costs in the amount of $24,000.00, this writer was convinced that Defendant was in breach of the contract. The Plaintiff credibly testified, which was supported by evidence, that she had previously paid and/or needs to pay a total of $158,850.00 to correct and complete the work that was contracted to be performed by the Defendants. (See Tr. 152-187). And when Patrick McGonigle, the president of Welte Roofing Company; James Ireland, an electrical contractor for over forty-nine (49) years; Nicholas Kowalecki, a mason; Joseph Pasquale, the owner of The Kitchen and Bath Store; and Bernie Swatchick, the plumbing operations manager from Tudi mechanical all credibly testified as to the deficiencies with the Defendants' work, this Court was more than convinced that the Defendants had breached the contract with the Plaintiff (See Tr. 4-79).

To claim that it was error to find that the Defendants breached their contract when faced with a mountain of evidence and testimony to the contrary is disingenuous at best and should not be given additional consideration by the Superior Court.

The Defendants remaining claims of error concern this Court's failure to acknowledge the letter of May 17, 2012, as a substitute contract or accord and

7

satisfaction. The Defendants assert that the parties to the original contract entered into a substituted contract in May of 2012. In April of 2012, a dispute arose between the parties as to an owed sum, purported by the Defendants to be $77,800.00. The May 2012 agreement is an offer from the Plaintiff to George Zawilla in which the Plaintiff proposes an itemized list of building products to be provided or installed for an additional amount of $40,000.00, to be paid in two $20,000.00 payments. The Plaintiff failed to pay the second installment payment under that agreement.

Although the Defendants provide the courts with a primer on substituted contracts, the Defendants are silent as to why said contract does not have to comport with Home Improvement Consumer Protection Act. The Plaintiff has consistently argued that the letter of May 7, 2012 is unenforceable as it fails to comply with the Home Improvement Consumer Protection Act (hereinafter "HICPA"), codified at 73 P.S. §517.7, which includes numerous requirements that are absent in the May 2012 agreement, including:

> (a)(1) in writing and is legible and contains the Home Improvement Contractor Registration Number of the performing contractor.
>
> (a)(3) contains the entire agreement between the owner and the contractor, including attached copies of all required notices..
>
> (a)(6) contains the approximate starting date and completion date.
>
> (a)(7) includes a description of the work to be performed, the materials to be used and a set of specifications that cannot be changed without a written change order signed by the by the owner and contractor.
>
> (a)(8) includes the total sales price due under the contract or includes a time and materials provision wherein contractor and owner agree in writing to the performance of the home improvement by the contract and payment for the home improvement by the owner, based o time and materials...
>
> (a)(10) includes the names, addresses and telephone numbers of all subcontractors on the project known at the date of signing the contract.

8

(a)(12) includes the toll free telephone number under Section 3(b)..

(a)(13) includes a Notice of the Right of Rescission under Subsection (b).

After assessing the testimony and evidence elicited at trial, it is apparent that the Defendants failed to follow any of the requirements codified in the HICPA. This writer is unwilling to hold the Plaintiff to a writing that is deficient as to all the requirements enacted in an effort to preclude the type of litigation *sub judice*.

## V. <u>CONCLUSION</u>

For the above stated reasons, this writer respectfully requests the Superior Court of Pennsylvania to affirm this Court's Order dated April 24, 2015.

BY THE COURT:

DATE: July 22, 2015

Michael A. Della Vecchia, Judge